PERFECT CLEANING SERVICES, INC., peticionaria, v. CORPORA-
CIÓN DEL CENTRO CARDIOVASCULAR DE PUERTO RICO Y DEL CA-
RIBE, recurrida.

*Número:* CC-2003-963          *Resuelto:* 16 de agosto de 2004

*Héctor L. Banchs Pascualli*, abogado de la parte peticionaria; *Eduardo A. Vera Ramírez* y *Alberto J. Rodríguez Ramos*, abogados de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Debemos determinar si procedía desestimar la solicitud de revisión judicial que presentó el peticionario Perfect Cleaning Services, Inc. ante el Tribunal de Apelaciones a la luz de la doctrina de *agotamiento de remedios administrativos*, debido a que no se perfeccionó oportunamente la reconsideración jurisdiccional que dispone el Reglamento para la Adquisición y Venta de Equipos, Materiales y Servicios No Profesionales, Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe de 29 de junio de 1992 (Reglamento Núm. 4727 de

la Corporación del Centro Cardiovascular, Reglamento Núm. 4727 o Reglamento).

## I

La Corporación del Centro Cardiovascular de Puerto Rico y del Caribe (Corporación del Centro Cardiovascular o Corporación) invitó al público a participar en una subasta para servicios de limpieza, a la que asistieron como licitadores North Janitorial Services Inc., NBM Enterprises, Multi Clean, Inc. y Perfect Cleaning Service, Inc. (Perfect Cleaning). El 4 de abril de 2003, la Corporación del Centro Cardiovascular adjudicó la subasta a favor de NBM Enterprises y lo notificó a Perfect Cleaning mediante facsímil el 9 de abril de 2003. En fecha posterior, se envió una notificación mediante correo, la cual no consta en autos.

En la notificación de la adjudicación que recibió Perfect Cleaning se advirtió que podía solicitar reconsideración dentro de los próximos diez días a partir del archivo en autos de copia del aviso de la adjudicación de la subasta. Se expresó, asimismo, que la parte adversamente afectada "que haya agotado todos los remedios provistos por la [Junta de Revisión de Subastas Formales], particularmente el foro apelativo de la Junta de Revisión de Subastas Formales", podría solicitar una revisión ante el Tribunal de Apelaciones. Esta notificación es de *4 de abril de 2003* y hace constar esa misma fecha como día en que se adjudicó la subasta.

*El 14 de abril de 2003*, Perfect Cleaning presentó una moción de reconsideración ante la Junta de Revisión de Subastas Formales. Alegó que la subasta se le adjudicó a un licitador que no cumplió con las especificaciones requeridas y que, además, cotizó un precio mayor que Perfect Cleaning. A pesar de que la Junta de Revisión de Subastas Formales no consideró esa moción dentro de los próximos diez días de haberse presentado, el 2 de mayo de 2003 emi-

tió una resolución mediante la cual desestimó la moción de reconsideración. Fundamentó la desestimación en el hecho de que no se había prestado la fianza que requiere el Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular como requisito indispensable para perfeccionar una solicitud de reconsideración o impugnación de subasta.

Previo a recibir notificación de esta resolución, *el 5 de mayo de 2003* Perfect Cleaning acudió al Tribunal de Apelaciones para solicitar una revisión judicial de la adjudicación de la subasta. Por su parte, la Corporación del Centro Cardiovascular se opuso a la solicitud de revisión ante el tribunal apelativo. Sostuvo, en síntesis, que ese tribunal carecía de jurisdicción para entender en el caso debido a que Perfect Cleaning no perfeccionó la moción de reconsideración ante la agencia administrativa porque no prestó la fianza requerida para ello, requisito jurisdiccional para la revisión judicial según el Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular. Luego de varios trámites apelativos procesales, el foro intermedio acogió la oposición de la Corporación y desestimó el recurso que presentó Perfect Cleaning en virtud de la doctrina de agotamiento de remedios administrativos.

Así las cosas, Perfect Cleaning acudió ante nos mediante una solicitud de *certiorari*. Examinada su solicitud, le concedimos un término a la Corporación del Centro Cardiovascular para que mostrara causa por la cual no debíamos revocar la resolución recurrida. En específico, le solicitamos que expusiera su posición sobre la validez del requisito de fianza que impone su Reglamento Núm. 4727 a la luz de las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.).[1] En cumplimiento con nuestra orden, la Corporación del Centro Cardiovascular compareció para sostener la validez de la fianza requerida como un

---

[1] Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*).

ejercicio legítimo de los poderes amplios delegados por la Asamblea Legislativa a esa corporación gubernamental. Con el beneficio de los argumentos de ambas partes, pasamos a dilucidar la controversia planteada.

Procede que evaluemos la decisión del Tribunal de Apelaciones de desestimar el recurso de revisión judicial presentado por Perfect Cleaning. En particular, debemos examinar la validez del requerimiento mediante reglamento de una fianza como requisito para perfeccionar una moción de reconsideración ante la agencia administrativa, así como también la exigencia reglamentaria de una solicitud de reconsideración como requisito jurisdiccional para la revisión judicial. Veamos.

II

A. La Ley Núm. 51 de 30 de junio de 1986 creó la Corporación del Centro Cardiovascular con el propósito de que provea acceso a equipos y tratamientos avanzados para atender los problemas cardiovasculares de los ciudadanos de Puerto Rico y del Caribe. Exposición de Motivos de la Ley Núm. 51, *supra*, 1986 Leyes de Puerto Rico 175, 175-176. Además de eliminar o mitigar los padecimientos cardiovasculares de los ciudadanos, la Corporación tiene el fin de fomentar la enseñanza, la investigación y el desarrollo de los profesionales de la salud en esta área de la medicina. Íd.

Con esos fines, la ley creó una corporación pública dirigida por una junta de directores. 24 L.P.R.A. sec. 343a. Se dispuso, además, que la Corporación del Centro Cardiovascular estaría a cargo de formular o ejecutar la política pública relacionada con la planificación, organización, operación y administración de los servicios cardiovasculares en Puerto Rico. 24 L.P.R.A. sec. 343b. A través de su junta de directores, se le facultó para coordinar con el Departamento de Salud, el Recinto de Ciencias Médicas de la Uni-

versidad de Puerto Rico, la Administración de Servicios Médicos y los sectores privados involucrados en la prestación de servicios cardiovasculares en Puerto Rico, todas las gestiones necesarias para el cumplimiento con sus fines y propósitos. Íd.

Asimismo, se le reconoció a la Corporación del Centro Cardiovascular facultad para, entre otras cosas: (1) elaborar un presupuesto operacional anual; (2) establecer los servicios, las unidades y los departamentos necesarios para su funcionamiento efectivo; (3) establecer e implantar mecanismos adecuados para garantizar la calidad del servicio al paciente y la corrección de cualesquiera fallas, y para la evaluación de credenciales y aprobación, suspensión o revocación de los privilegios para ejercer en sus facilidades; (4) establecer su propia estructura administrativa; (5) tomar dinero prestado de instituciones privadas, así como del Gobierno estatal o federal; (6) tener completo dominio y supervisión de todos sus equipos y facilidades; (6) demandar y ser demandada; (7) formular, adoptar, enmendar y derogar las reglas y los reglamentos necesarios para su funcionamiento; (8) negociar y otorgar toda clase de contratos con personas naturales o jurídicas para lograr los propósitos que se le encomendaron; (9) contratar y designar personal médico para dar tratamiento directo a pacientes; (10) comprar los materiales, suministros, equipos, piezas y servicios que sean necesarios y disponer de ellos de la manera que estime conveniente cuando dejen de servir sus propósitos, y (11) llevar a cabo por sí o contratar las obras de construcción, mejoras, ampliación, extensión o reparación que necesite la Corporación para cumplir con sus objetivos o fines. 24 L.P.R.A. sec. 343b.

Estos poderes de la Corporación del Centro Cardiovascular se le confirieron a su correspondiente junta de directores, la cual está encargada de nombrar un director ejecutivo. 24 L.P.R.A. sec. 343c. Este director ejecutivo, a su vez, es responsable de las cuestiones administrativas y

operacionales de la Corporación. Íd. Para ello, la Ley Núm. 51, *supra*, le confiere a éste el poder de nombrar a un subdirector, planificar y dirigir el funcionamiento de la Corporación y delegar en otros funcionarios sus poderes y facultades, con excepción de la facultad de promulgar reglamentos. 24 L.P.R.A. sec. 343d.

Además, la Asamblea Legislativa eximió expresamente a la Corporación del Centro Cardiovascular de la aplicación de la Ley de Personal del Servicio Público de Puerto Rico,[2] de las disposiciones de la Ley de Compras y Suministros del Estado Libre Asociado de Puerto Rico,[3] y de todos los reglamentos aprobados al amparo de éstas. 24 L.P.R.A. sec. 343j. Por consiguiente, se le ordenó aprobar un Reglamento General, un Reglamento de Personal y un Reglamento de Compras. Íd.

B. A la luz de la autoridad que le confiere la Ley Núm. 51, *supra*, la Corporación promulgó el Reglamento Núm. 4727, sobre compra y venta de equipos, materiales y servicios no profesionales. Este reglamento fue aprobado el 18 de abril de 1992 y dispuso que su vigencia sería efectiva una vez cumplidos los requisitos de la L.P.A.U., lo cual, según se desprende de la copia de éste en autos, ocurrió el 3 de julio de 1992.

El Reglamento Núm. 4727 se aprobó con el propósito de, entre otras cosas, establecer la Junta de Subastas y disponer los procedimientos ante la Junta de Revisión de Subastas Formales. Secs. 7.1.2 y 7.1.3 del Reglamento. La Junta de Subastas de la Corporación se compone de cinco personas nombradas por el director ejecutivo de la Corporación y está encargada de adjudicar subastas cuyo monto excedan los $25,000 (subastas formales). Sec. 8.22 del Reglamento. Por su parte, la Junta de Revisión de Subas-

---

[2] Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*).

[3] Esta referencia parece aludir a la Ley Núm. 196 de 4 de agosto de 1979 (3 L.P.R.A. sec. 931 *et seq.*), conocida como la Ley de la Administración de Servicios Generales, la cual dispone todo lo concerniente a las compras, servicios y suministros del Gobierno.

tas Formales la componen un mínimo de tres miembros nombrados por la Junta de la Corporación del Centro Cardiovascular con el fin de que atiendan la impugnación de subastas adjudicadas por la Junta de Subastas. Sec. 8.23 del Reglamento. Ésta tiene la obligación de resolver y evaluar los asuntos que se presenten ante su consideración conforme a las disposiciones de la L.P.A.U. Sec. 34.4.3 del Reglamento.

Por su parte, la Sec. 23.7.2.6. del Reglamento Núm. 4727 dispone que el aviso de adjudicación de una subasta formal advertirá el derecho de la parte adversamente afectada a presentar una moción de reconsideración o impugnación ante la Junta de Revisión de Subastas Formales y los términos correspondientes y, además, requiere que se advierta en el aviso de adjudicación lo siguiente:

"Una parte adversamente afectada *que haya agotado todos los remedios provistos por la [Junta de Revisión de Subastas Formales]*, podrá presentar una solicitud de revisión ante el Tribunal [de Apelaciones] dentro de un término de diez (10) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la Corporación. La mera radicación de una solicitud de revisión sobre impugnación de subastas no tendrá el efecto de paralizar la adjudicación de la subasta impugnada." (Énfasis suplido.) Véase, además, Sec. 24.3 del Reglamento.

Además, el Reglamento exige que la parte que acuda a la Junta de Revisión de Subastas Formales deposite una fianza en conjunto con el recurso que presente ante esa junta. Sec. 34.11 del Reglamento. Esta fianza tiene el propósito de responder por cualquier aumento en el costo que deba pagar la Corporación del Centro Cardiovascular por la dilación en el trámite de la compra y por los daños y perjuicios que se ocasionen a la Corporación por la dilación en la adquisición de los bienes y servicios, si se determina que la acción presentada fue temeraria. Secs. 34.11.1 y 34.11.1.2 del Reglamento. "El no radicar las fianzas requeridas será razón suficiente para desestimar el recurso de revisión o solicitud de intervención." Sec. 34.11 del Reglamento.

Conforme al trámite administrativo dispuesto en este reglamento, la parte adversamente afectada en un procedimiento de subasta formal *tiene* que presentar una moción de reconsideración o impugnación de subasta ante la Junta de Revisión de Subastas Formales, para lo cual deberá prestar una fianza. Solamente después de perfeccionar esta moción de reconsideración es que podría acudir en revisión judicial ante el Tribunal de Apelaciones.

Es a la luz de esta estructura administrativa que Perfect Cleaning presentó una moción de reconsideración ante la Junta de Revisión de Subastas Formales de la Corporación del Centro Cardiovascular, luego de que la Junta de Subastas de esa corporación no adjudicara la subasta a su favor. Su moción se desestimó por incumplimiento con la Sec. 34.11 del Reglamento 4727, que exige el depósito de una fianza como requisito para el perfeccionamiento de la moción de reconsideración *so pena* de desestimación de la solicitud. El Tribunal de Apelaciones desestimó, por lo tanto, el recurso de revisión judicial presentado por Perfect Cleaning al concluir que no se habían agotado los remedios administrativos.

Al examinar el ordenamiento administrativo provisto en la L.P.A.U. en cuanto a los procedimientos de subastas, conjuntamente con la ley habilitadora de la Corporación del Centro Cardiovascular, resolvemos que esa corporación actuó de manera *ultra vires* al requerir la presentación de una moción de reconsideración y el correspondiente depósito de una fianza como requisito jurisdiccional para la solicitud de una revisión judicial. Veamos.

### III

■ A. La L.P.A.U. se promulgó con el fin de disponer uniformidad a los procedimientos administrativos del Estado Libre Asociado de Puerto Rico. En esta ley se dispuso un cuerpo de reglas mínimas para gobernar de manera uniforme los procesos de adjudicación y reglamentación en la administración pública. *Asoc. Dueños Casas Parguera,*

*Inc. v. J.P.*, 148 D.P.R. 307 (1999); *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992).

■ En consideración a la uniformidad que se buscó promover, la L.P.A.U. sustituyó los procedimientos de las agencias que sean incompatibles con sus preceptos y ordenó el manejo de los asuntos administrativos de manera consecuente con sus disposiciones. *Asoc. Dueños Casas Parguera, Inc. v. J.P.*, supra; *Pagán Ramos v. F.S.E.*, supra, págs. 901–902. Conforme a ello, hemos resuelto que, como norma general, las disposiciones de la L.P.A.U. desplazan y tienen primacía sobre toda regla de una agencia en particular que sea contraria a ésta. *Hernández v. Golden Tower Dev. Corp.*, 125 D.P.R. 744 (1990); *Pagán Ramos v. F.S.E.*, supra, pág. 902. Por lo tanto, desde la aprobación del ordenamiento administrativo uniforme provisto en la L.P.A.U., las agencias están obligadas a conducir sus procedimientos de reglamentación, adjudicación y concesión de licencias y permisos en cumplimiento con los capítulos correspondientes de esta ley.

■ Con relación a los procedimientos administrativos de adjudicación de subastas en particular, la L.P.A.U. solamente uniformó los procedimientos de reconsideración ante la agencia y la revisión de la orden o resolución final por el foro judicial. 3 L.P.R.A. secs. 2151, 2169 y 2172. De esa manera se buscó simplificar los procedimientos de subastas al eximirlos del alcance del Capítulo III de la L.P.A.U. sobre procedimientos adjudicativos. Informe del Senado sobre el P. de la C. 232 de 25 de junio de 1989, págs. 5–6; 3 L.P.R.A. sec. 2151. A las agencias, por su parte, se les delegó la facultad individual de aprobar las normas, condiciones y especificaciones para las subastas. Íd. Véase, además, 3 L.P.R.A. sec. 2169. Por lo tanto, con respecto a las subastas, sólo los procedimientos de reconsideración y revisión judicial se consideran formales. Íd. Véase, además, 3 L.P.R.A. secs. 2151 y 2172; *Cotto v. Depto. de Educación*, 138 D.P.R. 658 (1995).

■ Sobre la solicitud de reconsideración dentro de

un procedimiento de adjudicación de subasta, la Sec. 3.19 de la L.P.A.U. señala que la parte adversamente afectada por una decisión *"podrá*, dentro del término de diez (10) días a partir de la *adjudicación de la subasta*, presentar una moción de reconsideración ante la agencia o entidad apelativa de subasta, de existir una en la agencia, según sea el caso". (Énfasis suplido.) 3 L.P.R.A. sec. 2169.(⁴) Para los casos de impugnación de subasta ante el foro judicial, se provee que

> ... la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de los diez (10) días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título. La mera presentación de una solicitud de revisión al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada. 3 L.P.R.A. sec. 2172.

▮▮▮▮  C. De otra parte, es norma altamente conocida que la autoridad de una agencia administrativa para aprobar reglas o reglamentos surge directamente de su ley habilitadora. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, págs. 122–123 y 131 *et seq.* El estatuto orgánico o ley habilitadora de una agencia es lo que "define y delimita" la extensión de la jurisdicción de la agencia. Íd., pág. 131. En cuanto a esto, el profesor Fernández Quiñones nos explica:

> Cualquier transgresión a lo pautado por la ley [habilitadora de la agencia] respecto a los linderos de acción constituye una

---

(⁴) Se dispone, además, que si la agencia o la entidad apelativa toma alguna determinación en cuanto a la solicitud de reconsideración, el término para solicitar la revisión judicial comenzará a transcurrir desde la fecha en que se archiva en autos copia de la notificación de la decisión de la agencia o la entidad apelativa que resuelve la moción. Si la agencia o la entidad apelativa no toman determinación alguna dentro de los diez días de haberse presentado la reconsideración, a partir del vencimiento del término comenzará a contar el término para la revisión judicial.

acción ilícita. Se considera que dicha actuación ha sido efectuada sin autoridad. La importancia de esta doctrina en el campo de la reglamentación es incuestionable. Descansa lo aseverado en la premisa de carácter absoluto de que el poder de aprobar reglas y reglamentos no puede trascender la autoridad delegada. Por tal razón, "un reglamento para implementar la ejecución de una ley puede complementarla, pero no estar en conflicto con ésta". Es nulo el reglamento que esté en conflicto o en contra de la ley. Íd., pág. 131, citando a *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980), y a *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961).

█ Por ello, al determinarse si una agencia cuenta con facultad para reglamentar cierto asunto, hay que atenerse a lo dispuesto en su ley habilitadora. *Franco v. Depto. de Educación*, 148 D.P.R. 703, 711–712 (1999). Véase, además, Fernández Quiñones, *op. cit.*, págs. 122–123. De esa manera se evita que la agencia exceda el marco de autoridad delegado por la Asamblea Legislativa y actúe de manera ilegal o *ultra vires*. *P.R.T. Co. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000). De igual forma, la regla o reglamento debe ser razonable. *Franco v. Depto. de Educación*, supra, pág. 712. Hay que asegurar que la agencia no imponga normas arbitrarias o caprichosas ajenas al propósito de las funciones que se le delegaron. Íd. Véase, además, *Carrero v. Depto. de Educación*, 141 D.P.R. 830, 837 (1996).

█ Al precisar si la agencia ha excedido su autoridad en el ámbito reglamentario, le corresponde al tribunal evaluar: (1) si se delegó poder de reglamentación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la L.P.A.U., y (5) si la reglamentación es arbitraria o caprichosa. *Pérez v. Com. Rel. Trab. Serv. Púb.*, 158 D.P.R. 180 (2002); *Caribe Comms., Inc. v. P.R.T.Co.*, 157 D.P.R. 203 (2002). La agencia habrá actuado de manera *ultra vires* si se concluye que la regla o reglamento examinado no se aprobó con arreglo a todos estos requisitos. *Ca-*

*ribe Comms., Inc. v. P.R.T.Co.*, supra. Véase, además, Fernández Quiñones, *op. cit.*, pág. 130. Por lo tanto, dicha actuación se considerará nula.

Vista la normativa expuesta anteriormente, veamos los hechos del presente caso.

## IV

En el caso de autos, la Corporación del Centro Cardiovascular ordena *mediante reglamento* que se solicite la reconsideración de la adjudicación de una subasta formal como *remedio administrativo jurisdiccional.* Además, exige la prestación de una fianza como requisito indispensable para el perfeccionamiento de esa moción de reconsideración. No obstante, del estudio de la autoridad delegada mediante la ley habilitadora de la Corporación, surge que la Asamblea Legislativa no le delegó autoridad para imponer restricciones al recurso de revisión judicial más allá de las provistas en la L.P.A.U.

Para los casos de adjudicación de subastas, la L.P.A.U. uniformó los procesos de reconsideración y revisión judicial. Por lo tanto, las agencias se deben atener a lo allí señalado en cuanto a esos procesos, a falta de que otra cosa se haya dispuesto en su estatuto orgánico. *Al respecto hemos señalado que las agencias "[carecen de] facultad para adoptar reglamentación que imponga requisitos adicionales a aquellos establecidos por [las leyes] que rigen la revisión de la agencia". Pérez v. Com. Rel. Trab. Serv. Púb.,* supra; *Franco v. Depto. de Educación,* supra, pág. 712, citando a *Carabarín et al. v. A.R.P.E.,* 132 D.P.R. 938 (1993), y a *Pagán Ramos v. F.S.E.,* supra. *Consiguientemente, a pesar de que las agencias tienen autoridad para disponer todo lo relativo a la adjudicación de subastas, en cuanto a la moción de reconsideración y revisión judicial están obligadas a observar las garantías mínimas uniformes que dispone la L.P.A.U. al respecto, a menos que la Asamblea Legislativa disponga otra cosa a través de la ley habilitadora*

*de la agencia.* 3 L.P.R.A. sec. 2151. Véase, además, *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. 869 (1999); *Aponte v. Policía de P.R.*, 142 D.P.R. 75 (1996).

■ Aunque ciertamente la Corporación del Centro Cardiovascular está facultada mediante ley para establecer su propia estructura administrativa y formular y adoptar las reglas y los reglamentos necesarios para su funcionamiento —incluido un reglamento para la compra y venta de equipos, materiales y servicios no profesionales— de esto no se puede deducir que se le delegó autoridad para exigir, *mediante reglamento*, agotar remedios administrativos adicionales no considerados en su ley habilitadora. *Una agencia no puede, mediante reglamento, disponer remedios administrativos que menoscaben las garantías mínimas uniformes recogidas en la L.P.A.U.* La autoridad para disponer gestiones administrativas jurisdiccionales para la revisión judicial sólo la puede conceder la Asamblea Legislativa a la agencia mediante ley. El ente administrativo no puede abrogarse esa facultad mediante reglamento.

■ *Precisamente al revisar la jurisdicción del Departamento de Educación para atender controversias laborales entre éste y sus empleados, en Franco v. Depto de Educación, supra, pág. 713, resolvimos que "si la agencia no está llamada por ley a adjudicar formalmente cierta controversia, la mera creación de un reglamento adjudicativo no le puede otorgar a la agencia una autoridad que no tiene sobre dicha controversia".*

En este caso, como expresáramos, aunque a la Corporación del Centro Cardiovascular se le delegó autoridad para gestionar por sí misma la compra y venta de materiales y servicios, y para reglamentar los procedimientos correspondientes para ello, en su ley habilitadora no se expresó o implicó de manera alguna que ésta podía requerir la presentación de una moción de reconsideración como requisito jurisdiccional para la revisión judicial o imponer una fianza para que la moción sea perfeccionada. Por lo tanto,

procede concluir que esa entidad corporativa actúo de manera *ultra vires* al añadir, mediante reglamento, remedios administrativos que no fueron autorizados en su ley habilitadora y que contradicen, además, las normas uniformes dispuestas en la L.P.A.U. Máxime, cuando según lo dispuesto en la Sec. 3.19 de la L.P.A.U. citada anteriormente, la solicitud de reconsideración en los procedimientos adjudicativos de subastas es *opcional*.

■ Aun cuando la Asamblea Legislativa reconoce una interpretación amplia, abarcadora y flexible de la delegación de poderes a las agencias administrativas, éstas deben actuar conforme a su ley habilitadora y cumplir siempre con los propósitos para los que fueron creadas. *Caribe Comms., Inc. v. P.R.T.Co.*, supra. Esta doctrina de delegación amplia de poderes no incluye la facultad administrativa de imponer requisitos jurisdiccionales para la revisión judicial mediante reglamento. En el caso de autos, la Corporación excedió sus facultades al requerir una moción de reconsideración y la prestación de la fianza correspondiente *mediante reglamento y sin autoridad en ley para ello.*

■ Valga señalar que particularmente sobre la moción de reconsideración, en *Aponte v. Policía de P.R.*, supra, resolvimos que en los procedimientos administrativos ordinarios ésta puede tener carácter jurisdiccional si así lo dispone la *ley habilitadora* de la agencia con posterioridad al 1995, fecha en que se enmendó la L.P.A.U. para disponer que no sea un requisito jurisdiccional para la revisión judicial. No obstante, en el caso de marras, distinto a *Aponte*, la moción de reconsideración y la fianza se disponen mediante reglamento sin que surja de la ley habilitadora delegación expresa o implícita para ello, lo cual constituye una extralimitación de la autoridad de la agencia para reglamentar.

■ Requerirle a una parte afectada adversamente por una decisión administrativa que acuda a cierto foro apelativo de la agencia creado mediante reglamento,

sin que exista autorización en ley para ello, es una actuación *ultra vires* del foro administrativo y, por ende, nula. *Franco v. Depto. de Educación*, supra, pág. 714. No resolver así conllevaría dar luz verde para que las agencias le requieran a las partes agotar los remedios administrativos que tengan a bien crear. Esto, además, retrasaría indeterminadamente la revisión judicial de las decisiones administrativas, aumentaría el costo del proceso administrativo y dilataría la pronta resolución de las controversias en este contexto, intereses altamente apreciados en el campo del derecho administrativo. Más aún en los procedimientos adjudicativos de subastas, en los cuales la Asamblea Legislativa ha demostrado un interés particular en que se hagan de manera expedita. Para ello se optó por impartirle un carácter informal y delegar su creación e implantación individualmente a las agencias. Véase 3 L.P.R.A. sec. 2169. En la L.P.A.U. sólo se regula formalmente la fase de reconsideración y revisión judicial, y aún así se disponen términos considerablemente más cortos que los considerados para la reconsideración y revisión judicial de los procedimientos administrativos ordinarios. Véase 3 L.P.R.A. secs. 2165, 2169 y 2172.

Por último, resolvemos además que, en vista de que Perfect Cleaning acudió al Tribunal de Apelaciones en cumplimiento con lo que entendía eran términos y procesos válidos según el Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular, su recurso de revisión judicial fue interpuesto oportunamente. Éste se presentó el 5 de mayo de 2003, último día hábil luego de vencido el término de diez días para que la Junta de Revisión de Subastas Formales pudiese considerar la moción de reconsideración presentada el 14 de abril de 2003.[5]

---

[5] El 4 de mayo de 2003, cuando realmente expiró el término para presentar la revisión judicial, luego de que la Junta de Revisión de Subastas Formales no actuó sobre la moción de reconsideración dentro de los diez días siguientes a su presentación, fue domingo. Por lo tanto, la solicitud de revisión judicial ante el tribunal apelativo fue oportunamente presentada el lunes 5 de mayo de 2003.

## V

Por consiguiente, *se expide el auto de "certiorari" y se revoca la resolución del Tribunal de Apelaciones mediante la cual se desestimó el recurso de revisión judicial presentado por Perfect Cleaning en el caso de autos. Resolvemos que tanto la solicitud de reconsideración como la fianza que requiere el Reglamento Núm. 4727 de la Corporación del Centro Cardiovascular son requisitos jurisdiccionales "ultra vires" y, por consiguiente, nulos. Se devuelve el caso de autos al foro apelativo intermedio para la continuación de los procedimientos de forma compatible con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López concurrió sin opinión escrita.