EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Camacho Huertas<br><br>    Peticionario<br><br>        v.<br><br>Compañía de Turismo de Puerto Rico    División    de Transportación Turística<br><br>    Recurrido | Certiorari<br><br>2008 TSPR 157<br><br>175 DPR _____ |

Número del Caso: CC-2006-502


Fecha: 19 de septiembre de 2008


Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel II

Juez Ponente:

        Hon. Dora T. Peñagarícano Soler

Abogado de la Parte Peticionaria:

        Lcdo. César Maraver Marrero

Abogada de la Parte Recurrida:

        Lcda. Maribel Ramírez Rodríguez



Materia: Revisión Administrativa procedente de la Compañía de
        Turismo, Área de Transportación Turística


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Camacho Huertas

      Peticionario

        v.

Compañía de Turismo de Puerto Rico División de Transportación Turística

      Recurrido

CC-2006-502

SENTENCIA

San Juan, Puerto Rico, a 19 de septiembre de 2008.

Por estar igualmente dividido el Tribunal y habiendo expedido el auto de *certiorari* solicitado, se confirma la sentencia emitida por el Tribunal de Apelaciones en el presente caso. Mediante dicha sentencia el foro apelativo intermedio, confirmó la determinación de la Compañía de Turismo, y resolvió que la Compañía de Turismo no tiene que aprobar un reglamento para requerir la prueba de dopaje a aquellas personas que soliciten la concesión o renovación de la licencia de operador de taxi turístico toda vez que tal prueba es un requisito *sine qua non* que emana de la Ley Núm. 282 de 19 de diciembre de 2002.

A tono con lo anteriormente expresado, se expide el auto de *certiorari* presentado y se dicta Sentencia confirmatoria de la emitida en el caso por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disidente con opinión. La Jueza Asociada señora Fiol Matta disiente sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Camacho Huertas

      Peticionario

        v.                  CC-2006-502

Compañía de Turismo de Puerto
Rico División de Transportación
Turística

      Recurrido

Opinión Disidente emitida por el Juez Asociado Señor Rivera Pérez.

San Juan, Puerto Rico, a 19 de septiembre de 2008.

El 21 de julio de 2006, expedimos auto de Certiorari para revisar una Sentencia dictada por el Tribunal de Apelaciones, mediante la cual dicho foro determinó que la prueba de dopaje requerida para la concesión de la licencia de operador de taxi turístico es un requisito *sine qua non*, el cual emana de la Ley Núm. 282 de 19 de diciembre de 2002 y no requiere la aprobación de un reglamento por parte de la Compañía de Turismo.

Por estar igualmente dividido el Tribunal, se confirmó la determinación del Tribunal de Apelaciones. Disentimos de este curso de acción. Entendemos que la controversia medular en el caso ante nos se circunscribe a determinar si la Compañía

de Turismo cumplió con el requisito plasmado en la sección 5.4 de la Ley de Procedimiento Administrativo Uniforme, en adelante L.P.A.U. La aludida disposición legal obliga a las agencias concernidas a concederle un procedimiento adjudicativo a toda persona que se le haya denegado la concesión de una licencia.

I

El 28 de octubre de 2004, el Sr. José Camacho Huertas, (en adelante señor Camacho Huertas o peticionario) acudió al Área de Transportación Turística de la Compañía de Turismo a los fines de solicitar la renovación de la licencia de operador de taxi turístico. En dicha ocasión, el Sr. Ángel Román Lebrón orientó al señor Camacho Huertas sobre los requisitos que éste tenía que completar para solicitar la renovación de su licencia de operador de taxi turístico.[1] Como parte de dichos requisitos, la Compañía de Turismo le requirió al señor Camacho Huertas realizarse una prueba de dopaje y le entregó una citación para que éste se realizara la misma al día siguiente, antes de las tres (3) de la tarde.[2] No obstante, el señor Camacho Huertas no acudió a realizarse la prueba.

Alrededor de un mes más tarde, el señor Camacho Huertas fue a la Compañía de Turismo para entregar los documentos requeridos. Tras examinar los documentos presentados por el señor Camacho Huertas, la Sra. Yasmín

---

[1] Apéndice del recurso de *Certiorari*, pág. 55.

[2] *Íd*, págs. 55 y 56.

Torres Rodríguez se percató que faltaban documentos, entre éstos, la prueba de sustancias controladas. En vista de ello, le indicó al señor Camacho Huertas que debía entregar a dicha agencia un documento que expresara las razones por las cuales no se hizo la prueba de dopaje el día señalado.[3]

A la semana siguiente, el 30 de noviembre de 2004, el señor Camacho Huertas entregó todos los documentos requeridos, incluyendo el escrito en el que explicó los motivos que le impidieron realizarse la prueba de dopaje el día indicado por la Compañía de Turismo. En el referido escrito, adujo que no pudo realizarse la prueba de sustancias controladas el día pautado para ello porque tenía que recoger a sus hijos. Sostuvo, además, que él le había indicado al funcionario que lo atendió que no podía realizarse la prueba de dopaje el día señalado y que éste le informó que no podía hacerse la prueba otro día.[4]

Aun cuando el señor Camacho Huertas entregó los documentos solicitados, la señora Torres Rodríguez le informó que ese día no le expedirían una nueva citación para realizarse la prueba de sustancias controladas y le indicó que posteriormente lo llamarían para que pasara a recoger la orden.[5]

El 7 de diciembre de 2004, a las 8:20 de la mañana la señora Torres Rodríguez se comunicó vía telefónica con el

---

[3] *Íd*, pág. 57.

[4] *Íd*, "Resolución y Orden" de la Compañía de Turismo, pág. 31.

[5] *Íd*, pág. 57.

señor Camacho Huertas y le dijo que debía pasar a recoger la orden para la prueba de dopaje.[6] Según se desprende de los autos, el señor Camacho Huertas expresó que pasaría a recoger la referida orden. Sin embargo, no lo hizo y dos días más tarde llamó al Área de Transportación Turística para notificar que pasaría a buscar el referido para la prueba de sustancias controladas.[7]

No obstante, la señora Torres Rodríguez le comunicó al peticionario que no podía entregarle el referido para la prueba de dopaje puesto que no lo buscó el día señalado para ello. Ante tal situación, el señor Camacho Huertas le explicó a la señora Torres Rodríguez que el día que lo llamaron por teléfono para que recogiera el referido, él estaba durmiendo y no sabía si la llamada había sido real o un sueño.[8]

Así las cosas, el 3 de noviembre de 2005, la Compañía de Turismo emitió una "Resolución y Orden" en la cual declaró no ha lugar la solicitud de renovación de licencia de operador de taxi turístico presentada por el señor Camacho Huertas. Fundamentó su denegatoria arguyendo que en virtud de los Artículo 13 y 44 de la Ley Núm. 282 de 19 de diciembre de 2002, el peticionario no había demostrado su idoneidad para la obtención de la licencia de operador

---

[6] *Íd*, pág. 58.

[7] *Íd*, pág. 31.

[8] *Íd*.

de taxi turístico toda vez que no se había realizado la prueba de dopaje.[9]

Oportunamente, el señor Camacho Huertas solicitó reconsideración de la determinación emitida por la agencia. En su escrito, el señor Camacho Huertas expuso que la Compañía de Turismo actuó en abierta violación a su ley habilitadora y a la sección 5.1 de la Ley de Procedimiento Administrativo Uniforme, toda vez que no había promulgado un reglamento para regular el procedimiento de expedición de licencias de operadores de taxi turístico. [10] Sostuvo,

---

[9] El Artículo 13 de la Ley núm. 282 de 19 de diciembre de 2002 dispone, *inter alia*, lo siguiente:

A. Nadie podrá dedicarse a prestar servicios de transportación turística terrestre, ni de servicio y venta de taxímetro, sin previamente haber solicitado y obtenido de la Compañía de Turismo la correspondiente franquicia, autorización, permiso y/o licencia.

B. La Compañía de Turismo tendrá la facultad de otorgar las franquicias, autorizaciones, permisos y/o licencias necesarias para autorizar la prestación de los bienes de Transportación Turística Terrestre y de servicio y venta de taxímetros. Las franquicias, autorizaciones, permisos y licencias serán concedidas por la Compañía de Turismo tomando en consideración la necesidad y conveniencia, la idoneidad del peticionario y el estricto cumplimiento por el mismo de todas las disposiciones de esta Ley y reglamentos aplicables.

C. El procedimiento y trámite a seguirse para la expedición de franquicias, autorizaciones, permisos y/o licencias, así como los requisitos que tendrán que cumplir los solicitantes, se regirán por las normas que mediante reglamento establezca la Compañía de Turismo. […]

Por otra parte, el Artículo 44(I)(4) de la referida Ley dispone que es un requisito indispensable para solicitar la licencia de operador presentar, entre otros documentos, un certificado médico acompañado de los resultados de la prueba de sustancias controladas realizada.

[10] 3 L.P.R.A sec. 2181.

además, que en virtud de la sección 5.4 de la Ley de Procedimiento Administrativo Uniforme, tenía derecho a impugnar la determinación de la agencia mediante un procedimiento adjudicativo que le brindara todas las garantías del debido proceso de ley.[11]

En vista de que la "Moción de Reconsideración" presentada por el señor Camacho Huertas no fue acogida, éste presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. En dicho escrito, el señor Camacho Huertas reiteró los argumentos esgrimidos en su "Moción de Reconsideración". Puntualizó, además, que la aprobación de un reglamento para la administración de la prueba de dopaje es indispensable para evitar la arbitrariedad en la aplicación de la Ley Núm. 282 de 19 de diciembre de 2002, puesto que dicho estatuto no establece el procedimiento a seguir ni dispone las salvaguardas necesarias para garantizar la protección al derecho a la intimidad del solicitante.[12]

Por su parte, la Compañía de Turismo señaló que el señor Camacho Huertas no demostró que era idóneo para la obtención de la renovación de la licencia taxi turístico puesto que no se realizó la prueba de dopaje requerida por la Ley Núm. 282 de 19 de diciembre de 2002. La referida agencia arguyó que el procedimiento establecido en dicho estatuto para que los solicitantes de la licencia de taxi

---

[11] Apéndice del recurso de *Certiorari*, págs. 35-40.

[12] *Íd*, págs. 21-27.

turístico se realicen la prueba de sustancias controladas, no es arbitrario ya que es aplicable a toda persona que solicite dicha licencia.

Sin embargo, la Compañía de Turismo admitió que no contaba con un reglamento que regulara todo lo concerniente a la prueba de dopaje y a los requisitos estatutarios para la obtención de la licencia de operador de taxi turístico. No obstante, expresó que desde la puesta en vigor de la aludida disposición legal, ha estado laborando para lograr la aprobación de un reglamento que regule lo antes mencionado.[13]

Luego de ponderar los argumentos esbozados por ambas partes, el Tribunal de Apelaciones resolvió que la prueba de dopaje para la concesión de la licencia de operador de taxi turístico es un requisito *sine qua non*, el cual emana de la Ley Núm. 282 de 19 de diciembre de 2002 y no requiere la aprobación de un reglamento. Ello en vista de que en aras de proteger la vida y la propiedad, es un objetivo razonable que el Estado se asegure que los operadores de taxi turístico conduzcan libres de la influencia de sustancias controladas. Finalmente, el foro apelativo intermedio sostuvo que la determinación de la Compañía de Turismo está avalada por evidencia sustancial que obra en el expediente.

---

[13] *Íd*, págs. 47-53. Es menester señalar que a finales del 2006, la Compañía de Turismo aprobó el Reglamento de Procedimientos Adjudicativos de Transportación Turística y el Reglamento Aplicable a la Transportación Turística Terrestre, el cual regula todo lo concerniente a la expedición, renovación y cancelación de licencia de operador de taxi turístico.

Inconforme con dicha determinación, el señor Camacho Huertas acudió ante nos mediante recurso de *certiorari*, señalando que el foro apelativo intermedio el error siguiente:

> **ERRÓ EL TRIBUNAL DE APELACIONES AL ENTENDER QUE LA LEY 282 DEL 19 DE DICIEMBRE DE 2002, AL EXIGIR PRUEBAS DE SUSTANCIAS CONTROLADAS, NO REQUIERE DE LA AGENCIA ESTABLECER UN REGLAMENTO QUE ESTABLEZCA Y DIVULGUE LOS CRITERIOS DE CÓMO SE REALIZARAN [sic] DICHAS PRUEBAS Y LAS CONSECUENCIAS DE NO HACERLAS. EN LA ALTERNATIVA, ERRÓ EL TRIBUNAL DE APELACIONES AL NO CONSIDERAR QUE LOS ARTÍCULOS QUE HACEN REFERENCIA A DICHAS PRUEBAS SON VAGOS Y NO CONTIENEN PARÁMETROS QUE ILUSTREN A LOS PETICIONARIOS.**

Examinada la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.

## II

Hace cuatro lustros la Asamblea Legislativa aprobó la Ley de Procedimiento Administrativo Uniforme[14], en adelante L.P.A.U., a los fines de estructurar y crear un cuerpo de reglas mínimas y uniformes para gobernar los procedimientos de reglamentación, adjudicación y concesión de licencias realizados por las agencias gubernamentales.[15] En atención a lo anterior, la L.P.A.U. sustituyó los procedimientos

---

[14] 3 L.P.R.A. sec. 2101 *et seq.*

[15] Perfect Cleaning Services v. Corp. del Centro Cardiovascular, 162 D.P.R. 745 (2004); Pagán Ramos v. F.S.E., 129 D.P.R. 888 (1992).

administrativos que eran incongruentes con sus disposiciones estatutarias y ordenó el manejo de tales asuntos de manera consistente con sus preceptos.[16]

La pieza legislativa en cuestión le delegó a los organismos administrativos facultades cuasi judiciales en aras de proveer un sistema adjudicativo económico, rápido, flexible y práctico.[17] Ahora bien, dado que las determinaciones de los entes administrativos pueden interferir con los intereses de libertad y propiedad de las personas, la L.P.A.U. extendió a los procesos de las agencias administrativas la garantía a un debido proceso de ley. No obstante, en Almonte v. Brito, *supra*, recalcamos que las normas del debido proceso de ley no aplican en los procedimientos adjudicativos de las agencias con la misma rigurosidad que en la adjudicación judicial. Ello es así puesto que hemos reconocido que los procedimientos administrativos conducidos en las agencias administrativas están revestidos de flexibilidad y celeridad.

Como parte del debido proceso de ley en su vertiente procesal, la L.P.A.U. dispone que en todo procedimiento adjudicativo formal, se salvaguardarán los siguientes derechos: derecho a notificación oportuna de los cargos; derecho a presentar evidencia; derecho a una adjudicación imparcial; y derecho a que la decisión sea basada en el

---

[16] Olivo v. Scrio. de Hacienda, 164 D.P.R. 165 (2005); Perfect Clearing Services v. Corp. del Centro Cardiovascular, *supra*.

[17] Almonte v. Brito, 156 D.P.R. 475, 481 (2002).

expediente.[18] El disfrute de los derechos antes mencionados sólo es posible a través de una audiencia. No obstante, en Vélez Ramírez v. Romero Barceló, decretamos que el debido proceso de ley no requiere que haya una vista previa a toda privación de un derecho o interés propietario.[19] Basta que en algún momento significativo, la parte afectada por la determinación de la agencia tenga la oportunidad de defenderse y presentar su caso en un proceso con las garantías que entraña el debido proceso de ley.[20]

En cuanto a los procedimientos para la concesión de licencias y franquicias, **la sección 5.4 de la L.P.A.U. dispone que a toda persona a la que se le deniegue la concesión una licencia o gestión similar tendrá derecho a impugnar la determinación de la agencia mediante un procedimiento adjudicativo estatuido en la ley especial de que se trate y en las secs. 3.1 a 3.18 de la L.P.A.U.**[21]

Del texto legal citado se colige que toda persona a la que una agencia administrativa le deniegue una licencia, tendrá derecho a un debido proceso de ley en el que pueda impugnar dicha determinación. Necesariamente, tal procedimiento deberá garantizarles a los individuos los derechos plasmados en la sección 3.1 de la L.P.A.U. De

---

[18] 3 L.P.R.A. sec. 2151.

[19] 112 D.P.R. 716, 730 (1982).

[20] *Íd.* En el citado caso enfatizamos que para determinar el tipo de vista concedida y el momento adecuado, es menester analizar conjuntamente los intereses gubernamentales y los de la persona afectada.

[21] 3 L.P.R.A sec. 2184. Énfasis suplido.

conformidad con lo anterior, en el procedimiento adjudicativo en donde se impugne la denegación de una licencia, la parte afectada tiene derecho a confrontarse con los testigos, a presentar prueba oral y escrita a su favor, a la presencia de un adjudicador imparcial y a que la decisión esté basada en el expediente administrativo.

Por tanto, si la agencia administrativa no le confiere a la persona afectada por su dictamen el procedimiento adjudicativo antes mencionado así como las garantías procesales que emanan de la L.P.A.U., incurrirá en violaciones al debido proceso de ley.

**III**

Es un principio firmemente establecido en nuestro ordenamiento jurídico que la revisión judicial de las decisiones administrativas tiene como norte delimitar la discreción de las agencias y asegurarse que éstas actúen dentro de los poderes delegados y conforme a la ley.[22] La revisión judicial de las decisiones administrativas comprende tres áreas, a saber: la concesión del remedio apropiado, la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial y la revisión completa de las conclusiones de derecho.[23]

Respecto a las determinaciones de hechos emitidas por los organismos administrativos, la L.P.A.U dispone que los tribunales sostendrán las mismas si se basan en evidencia

---

[22] Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999).

[23] 3 L.P.R.A sec. 2175.

sustancial.[24] Como se sabe, evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión.[25] Sin embargo, las conclusiones de derecho efectuadas por las agencias serán revisables en todos sus aspectos.[26] Ahora bien, ello no significa que los tribunales al revisar las decisiones administrativas, gocen de libertad absoluta para desechar las conclusiones e interpretaciones de la agencia, y sustituir el criterio de ésta por el propio.[27]

Sabido es que los tribunales apelativos concederán gran deferencia a las decisiones de las agencias administrativas en vista de la vasta experiencia y el conocimiento especializado que éstas poseen.[28] Es por ello que las decisiones administrativas gozan de una presunción de corrección y legalidad. No obstante, la deferencia a la interpretación de la agencia cederá cuando la misma afecte derechos fundamentales, resulte irrazonable o conduzca a la comisión de injusticias.[29]

---

[24] *Íd.*

[25] <u>P.C.M.E. v. Junta de Calidad Ambiental</u>, res. el 23 de diciembre de 2005, 2005 TSPR 202.

[26] 3 L.P.R.A. sec. 2175.

[27] <u>Otero Mercado v. Toyota</u>, res. el 3 de febrero de 2005, 2005 TSPR 8.

[28] <u>Martínez Segarra v. Rosado Santoni</u>, res. el 14 de septiembre de 2005, 2005 TSPR 127.

[29] Véase <u>Costa, Piovanetti v. Caguas Expressway</u>, 149 D.P.R. 881, 889; <u>Com. Seg. P.R. v. Antilles Ins. Co.</u>, 145 D.P.R. 226 (1983).

De ahí que al ponderar la decisión emitida por una agencia, los tribunales deberán determinar si la actuación de la agencia fue arbitraria, ilegal o tan irrazonable, que constituyó un abuso de discreción.[30] Asimismo, la interpretación de la agencia no prevalecerá cuando ésta produce resultados antagónicos o contrarios a la finalidad del estatuto interpretado.[31]

**IV**

A la luz de los preceptos expuestos, debemos resolver si la Compañía de Turismo violentó las garantías procesales que dimanan del debido proceso de ley, al no conferirle al señor Camacho Huertas un procedimiento adjudicativo en donde éste tuviera la oportunidad de impugnar la determinación de la referida agencia.

Según indicáramos anteriormente, la sección 5.4 de la L.P.A.U. dispone claramente que cuando la agencia deniegue la concesión de una licencia, la persona afectada tendrá derecho a impugnar tal determinación mediante un procedimiento adjudicativo. Ello, como corolario del debido proceso de ley que le garantiza un proceso justo a los individuos cuando la determinación de la agencia administrativa afecta un interés propietario. Por tanto, cuando el ente administrativo deniegue la concesión de una licencia, viene obligado a celebrar una vista evidenciaria

---

[30] Véase <u>Mun. de San Juan v. J.C.A.</u>, *supra*; <u>Fuertes y otros v. A.R.P.E.</u>, 134 D.P.R. 947 (1993).

[31] Véase <u>Costa, Piovanetti v. Caguas Expressway</u>, *supra*.

en donde la parte afectada pueda impugnar dicha determinación con todas las garantías procesales.

En el caso de autos, el señor Camacho Huertas se desempeñó por años como operador de taxi turístico. Tras la expiración de su licencia, éste acudió a la Compañía de Turismo para renovar la misma. Posteriormente, la Compañía de Turismo declaró no ha lugar la solicitud de renovación de licencia del señor Camacho Huertas en vista de que éste no acudió a la agencia para buscar el referido para la prueba de sustancias controladas.

Luego de la determinación adversa emitida por la Compañía de Turismo, el señor Camacho Huertas presentó un escrito en la cual solicitó la reconsideración del dictamen de la agencia y que se le concediera la celebración del procedimiento adjudicativo plasmado en la sección 5.4 de la L.P.A.U., *supra*, con el propósito de entregar el resultado de la prueba de dopaje requerida. No empece lo anterior, la Compañía de Turismo declaró no ha lugar la moción presentada por el peticionario y no le proveyó a éste la vista adjudicativa requerida por la L.P.A.U.

Al así actuar, la Compañía de Turismo violentó los postulados más básicos y elementales de nuestro sistema de justicia, a saber, el derecho a ser oído cuando se interfiere con el interés propietario de una persona. La referida agencia ignoró el lenguaje claro e inequívoco de la L.P.A.U. al no concederle al señor Camacho Huertas la vista requerida. Aun cuando hemos reconocido una amplia gama de discreción a las agencias administrativas, en el

presente caso, la Compañía de Turismo no tenía discreción para obviar un procedimiento administrativo mandatario por ley. Más aún, la Ley Núm. 282 de 19 de diciembre de 2002 en su Artículo 29 autoriza a la Compañía de Turismo a celebrar vistas adjudicativas motu propio o a petición de parte interesada. Más adelante, el mencionado artículo señala que la facultad adjudicativa delegada a la Compañía de Turismo deberá ser implantada conforme a las disposiciones de la L.P.A.U.

Concluimos que la Compañía de Turismo estaba obligada a concederle al señor Camacho Huertas una vista adjudicativa en donde éste pudiese impugnar la determinación emitida por ésta. La referida agencia no podía privar al señor Camacho Huertas de su interés propietario sin la garantía constitucional a un debido proceso de ley.

Es imperativo indicar que aún cuando el señor Camacho Huertas no buscó la orden para realizarse la prueba de dopaje el día indicado por la agencia, ésta no podía obviar el procedimiento dispuesto por la L.P.A.U. Somos conscientes que el interés del Estado en la vida y seguridad de los ciudadanos es uno de gran preeminencia, pero ello no es razón para ignorar el claro lenguaje de la L.P.A.U.

**V**

Por los fundamentos antes expuestos, respetuosamente DISENTIMOS del curso de acción de la Mayoría.


*Efraín E. Rivera Pérez*
*Juez Asociado*