Opinión disidente de la
Jueza Asociada Señora Fiol Matta,
a la cual se unen el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez.
Disiento respetuosamente de la decisión que hoy emite la mayoría del Tribunal. En primer lugar, difiero de su conclusión de que los poderes delegados por la Ley Núm. 7 de 9 de marzo de 2009(1) a la Junta de Reestructuración y Estabilización Fiscal (JREF) incluyen la facultad para computar la antigüedad de los empleados públicos que ha-brán de ser cesanteados a base de una fecha de corte dis-tinta a la fecha de su despido, lo cual conlleva que a estos servidores públicos no se les acredite el tiempo trabajado entre la fecha de corte y su cesantía. Entiendo que, si bien la Ley Núm. 7 delegó poderes amplios a la JREF para po-ner en vigor la fase de cesantías de la referida Ley, ésta actuó ultra vires al ignorar el mandato de ese estatuto de que el cómputo de la antigüedad debía incluir “todos los servicios prestados por los empleados afectados en el servi-cio público”. (Enfasis suplido.)(2) Al establecer una fecha de corte para ese cómputo que es anterior a la efectividad de *127 las cesantías, la JREF eliminó, artificialmente y contra el mandato de la Ley Núm. 7, el tiempo trabajado por los recurridos. Si bien la JREF tenía la facultad de establecer una fecha de corte distinta a la de cesantía, que le permi-tiera llevar a cabo el cómputo de antigüedad ordenado por la ley, estas fechas no podían separarse a tal grado que se contraviniera el mandato del Artículo 37.04(b)(4). No hay duda de que con ese mandato el legislador quiso evitar un resultado tan anómalo como el de los casos de autos, en los que los empleados fueron despedidos, a pesar de que a la fecha de la cesantía cumplían con la antigüedad requerida.
En segundo lugar, aun aceptando la tesis mayoritaria de que, en efecto, la JREF posee la facultad de establecer la fecha de corte de esa manera, la Opinión del Tribunal ignora completamente la controversia de si la JREF actuó de forma arbitraria y caprichosa al escoger una fecha que inevitablemente conlleva la eliminación de varios meses de trabajo del cómputo de antigüedad de los empleados cesanteados. Esto requiere un análisis que debe trascender la controversia sobre la delegación de poderes. Vale recal-car que la JREF no produjo alegación y, menos aún, prueba que justificara por qué escogió el 17 de abril de 2009 como fecha de corte mientras estableció que las cesantías serían efectivas el 6 de noviembre de ese año. No hay nada en el expediente, más allá de una alegación de la parte peticio-naria de que era necesario adoptar una fecha uniforme para el corte del cómputo, que explique la razón por la que se escogió ésta. Querer adoptar una fecha uniforme no exime a la agencia de tener que explicar, aunque sea míni-mamente, por qué escogió esa fecha, máxime cuando esto tiene el efecto de que los recurridos hayan trabajado por casi siete meses sin que ese esfuerzo se haya incluido en el cálculo de su antigüedad. La mayoría obvia este asunto y se contenta con resolver que la JREF tenía el poder para establecer urna fecha de corte debido a la delegación amplia de poderes contenida en la Ley Núm. 7.
*128 I
La Ley Núm. 7 establece, entre otros, un plan de emer-gencia de reducción de gastos por parte del gobierno del Estado Libre Asociado de Puerto Rico. Mediante el Artículo 37, 8 L.P.R.A. secs. 8796-8801, se instituyó la segunda fase del plan de reducción de gastos, la cual conllevó cesantías involuntarias para la eliminación de puestos. Esta fase se-ría aplicable, con determinadas excepciones, a todas las agencias de la Rama Ejecutiva del Gobierno.(3) Es decir, la Fase II constituye un plan de cesantías de empleados en el servicio público.(4)
En Domínguez Castro et al. v. E.L.A. I, explicamos que “este plan de cesantías se rige por el criterio de antigüedad en el servicio público”. (Énfasis suplido.)(5) Es más, en ese caso hicimos hincapié en que “las cesantías que autoriza la Ley Núm. 7 se rigen única y exclusivamente por el criterio de antigüedad”. (Énfasis en original.)(6) Esta norma surge expresamente del Artículo 37.04(b)(3) de la Ley.(7) Por otra parte, el Artículo 37.04(b)(4) de la Ley Núm. 7 provee una definición de “antigüedad”:
A los fines de determinar antigüedad de empleados afecta-dos se considerarán todos los servicios prestados por los em-pleados afectados en el servicio público, independientemente de las disposiciones de los convenios colectivos, reglamentos, cartas circulares y otros documentos normativos. (Enfasis en el original.)(8)
*129 Esta disposición de la Ley Núm. 7 es similar a lo esta-blecido por la Sección 6.6(9)(a) de la Ley Núm. 184-2004.(9) Precisamente, en Domínguez Castro et al. v. E.L.A. I hicimos referencia a este hecho: “Es de notar que el procedi-miento que establece la [Ley Núm. 7] es bastante similar al que establece la Ley Núm. 184 para este tipo de despido. ... De una lectura de las disposiciones pertinentes de ambos estatutos podemos colegir, en primer lugar, que ambas re-quieren, para determinar la antigüedad, el que se consi-dere todo servicio prestado en el servicio público por los empleados afectados.” (Enfasis suplido.)(10)
Del texto de la Ley Núm. 7 y de nuestras expresiones en Domínguez Castro et al. v. E.L.A. I, supra, se desprende con claridad que ese estatuto ordena que las cesantías de los empleados públicos bajo la Fase II se fundamenten en el criterio exclusivo de la antigüedad y que ésta incluye la totalidad de los servicios prestados por estos empleados.
La Opinión mayoritaria concluye que al delegarle a la JREF poderes amplios para implementar la Fase II, la Ley Núm. 7 también le otorgó la autoridad para computar la antigüedad de los servidores públicos a base de una fecha de corte significativamente anterior a la fecha de cesantía. La consecuencia necesaria es que los recurridos serían ce-santeados sin que se les contaran todos los años de servicio para calcular su antigüedad. Para ello, la mayoría dedica gran parte de su análisis a discutir, a grandes rasgos, el desarrollo de la doctrina de la delegación de poderes a las agencias administrativas tanto en Estados Unidos como en nuestro país.(11) Concluye entonces que la Ley Núm. 7 de-legó poderes amplios a la JREF y que el estatuto contiene principios inteligibles y normas adecuadas para el ejercicio del poder delegado, lo cual es suficiente para resolver que *130 la JREF no actuó de forma ultra vires al establecer la fecha de corte en el cómputo de antigüedad.
Con todo respeto, este argumento me parece un non sequitur. Una delegación amplia de poderes no permite que una agencia actúe contrario a un mandato establecido ex-presamente en la ley que autoriza esa delegación. La doc-trina de la delegación no autoriza a la agencia a ignorar las disposiciones de la ley que la creó.
No cabe duda de que “la delegación de poderes puede hacerse constitucionalmente a base de normas amplias y generales”.(12) La amplia delegación de facultades cuasile-gislativas y cuasijudiciales a las agencias administrativas “es una de las características sobresalientes del estado moderno”.(13) Ahora bien, “la Legislatura no puede delegar poderes arbitrarios e ilimitados a los organismos adminis-trativos”.(14) El hecho de que la Asamblea Legislativa haya delegado poderes amplios a una agencia de manera consti-tucional no significa que dicho poder “es ilimitado ni libre de revisión judicial”.(15) Precisamente, la revisión judicial incluye analizar:
“(1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamenta-ción promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa.” (Enfasis suplido.)(16)
La agencia “habrá actuado de manera ultra vires si se concluye que la regla o reglamento examinado no se aprobó con arreglo a todos estos requisitos”.(17) No obstante la *131 existencia de una amplia delegación de poderes, las agen-cias “deben actuar conforme a su ley habilitadora”. (Enfa-sis suplido. )(18)
Por eso, no podemos limitar nuestro análisis, como lo hace la Opinión mayoritaria, a si hubo una delegación am-plia de poderes a la JREF. Por el contrario, debemos ana-lizar, en primer lugar, si la actuación de la agencia bajo sus amplios poderes delegados no contradice la ley que le hizo tal delegación, pues, en aquellos casos en que la agencia no respete la voluntad del legislador y los límites establecidos en el estatuto que le delegó esos poderes, la agencia estaría actuando ultra vires. (19) Una agencia “no puede excederse de lo que la Asamblea Legislativa le delegó”.(20) La doctrina de la delegación, por más amplia que sea, no es ilimitada y, menos aún, permite que la agencia ignore lo que la ley ha establecido expresamente.(21) En segundo lugar, debemos analizar si esa actuación es arbitraria o caprichosa.
En cuanto a la primera parte del análisis, no hay duda que al establecer una fecha de corte del cómputo de anti-güedad distinta a la fecha de cesantía, la JREF ignoró el mandato claro de la ley de que la antigüedad tenía que calcularse contabilizando todo el tiempo trabajado por los empleados que habrían de ser cesanteados. Si bien la agen-cia tenía la facultad de determinar los años de servicio re-queridos para eximir al empleado de la Fase II, así como la fecha de los despidos, no tenía autoridad para descontar artificialmente del cómputo de antigüedad el tiempo que sería trabajado entre la fecha de corte y la de las cesantías. Por más amplios que hayan sido los poderes delegados a la JREF, la propia Ley Núm. 7 es clara en este asunto y no permitía que la agencia lo ignorara. La fecha de corte adoptada por la JREF, en efecto, enmienda el Artículo *132 37.04(b)(4) de la Ley Núm. 7 para establecer que en el cóm-puto de antigüedad no se tomarían en consideración todos los años de servicio, sino la mayoría de éstos. La JREF no tenía autoridad para hacer esto y, por eso, actuó de modo ultra vires. La mayoría se equivoca al afirmar que “[n]o existe controversia en torno a que la JREF utilizó el crite-rio de antigüedad como principio inteligible”,(22) pues, como hemos visto, la JREF redefinió el concepto antigüedad, ig-norando el Artículo 37.04(b)(4).
Pero hay más. La decisión de la JREF de establecer el 17 de abril como la fecha de corte, mientras que los despi-dos serían efectivos en noviembre, sin justificación ni ex-plicación alguna, constituye una actuación arbitraria y caprichosa. En nuestro ordenamiento, tanto la Asamblea Legislativa como las agencias administrativas tienen que justificar sus actuaciones de alguna manera. De no haber tal explicación mínima, se afecta la función revisora de este Tribunal, pues no se puede saber si la acción de la agencia "fue arbitraria o caprichosa si no conocemos por qué tomó dicha acción”.(23) La única explicación presentada por la agencia es que la fecha de corte fue uniforme para todos los empleados.(24) Hasta el día de hoy, la JREF no ha ofrecido explicación alguna de por qué se escogió esa fecha ni de qué existe una separación tan marcada entre la fecha de corte y las cesantías. Tal actuación, además de contra-decir el mandato explícito de la Ley Núm. 7, es irrazonable y no debe sostenerse.
II
Por las razones expuestas, es inescapable la conclusión de que la JREF se excedió en sus poderes al establecer una fecha de corte de antigüedad pues, al no tomar en conside- *133 ración todos los servicios prestados por los empleados para determinar si cumplían con el periodo requerido para estar excluidos de la Fase II, violó el mandato del Artículo 37.04(b)(4) de la Ley Núm. 7. Igualmente inescapable es que esa actuación por parte de la JREF es, además, arbi-traria, caprichosa e irrazonable. En primer lugar, es, de por sí, irrazonable el que unos empleados fueran despedi-dos porque no cumplían con el tiempo mínimo requerido al 17 de abril, cuando sí lo cumplían al momento en que fue-ron cesanteados. En segundo lugar, confrontada con tal anomalía, la agencia no ha presentado siquiera una expli-cación o justificación sustantiva mínima que nos permita analizar su proceder. En nuestro ordenamiento jurídico, los poderes gubernamentales tienen que justificar el empleo de su poder. En nuestro sistema, “the King can do wrong”.

 Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, 3 L.P.R.A. sec. 8791 et seq.

 3 L.P.R.A. sec. 8799(b)(4).

 Sánchez Díaz et al. v. E.L.A., 181 D.P.R. 810, 818 (2011).

 Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231, 246 (2010).

 Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1, 21 (2010).

 Íd., págs. 62-63, citando el Artículo 37.04(b)(3) de la Ley Núm. 7. En Domínguez Castro et al. v. E.L.A. I, supra, pág. 64, enfatizamos en varias ocasiones el hecho de que la antigüedad sería el único criterio que se empleraría en la fase de cesantías.

 3 L.P.R.A. sec. 8799(b)(3): “Las cesantías de los empleados con nombramiento permanente o de carrera se efectuarán observando exclusivamente el criterio de antigüedad, de modo que sean cesanteados en primer término aquellos que tengan menor antigüedad.”

 3 L.P.R.A. sec. 8799(b)(4).

 3 L.P.R.A. sec. 1462e(9)(a): “A los fines de determinar antigüedad, se consi-derará todo servicio prestado en puestos de las agencias comprendidas en el Sistema.”

 Domínguez Castro et al. v. E.L.A. I, supra, pág. 63.

 Opinión mayoritaria, págs. 119-122.

 López v. Junta de Planificación, 80 D.P.R. 646, 661 (1958).

 Consejo Arqueológico v. Mun. Barceloneta, 168 D.P.R. 215, 224 (2006).

 López v. Junta de Planificación, supra, pág. 661.

 Luan Investment Corp. v. Román, 125 D.P.R. 533, 549 (1990).

 Íd., pág. 550, citando a M. & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 326 (1987).

 Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745, 759 (2004).

 Íd., pág. 762.

 Véase Consejo Arqueológico v. Mun. Barceloneta, supra, págs. 226-231.

 Raimundi v. Productora, 162 D.P.R. 215, 223 (2004).

 Véase Caribe Comms., Inc. v. P.R.T.Co., 157 D.P.R. 203, 212 (2002).

 Opinión mayoritaria, pág. 124.

 Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105, 127 (2002).

 Alegato de la Procuradora General, Caso Núm. CC-2010-1005, pág. 14.