EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Mercedes Fuentes Bonilla<br><br>Apelante<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Apelados | 2018 TSPR 98<br><br>200 DPR ____ |

Número del Caso: AC-2016-116

Fecha: 22 de mayo de 2018

Tribunal de Apelaciones:

 Región Judicial de San Juan

Abogados de la parte peticionaria:

 Lcdo. Reinaldo Camps del Valle
  Lcdo. Eufemio Martínez Cintrón

Oficina del Procurador General:

 Lcdo. Luis R. Román Negrón
 Procurador General

 Lcdo. Joseph Feldstein del Valle
 Subprocurador General

 Lcda. Carmen Riera Cintrón
 Procuradora General Auxiliar

Materia: Derecho Administrativo - El Tribunal de Apelaciones tiene jurisdicción y competencia para examinar la validez de una regla o reglamento que fue aplicado por una agencia al revisar el dictamen final administrativo. Procede que la Junta de Corredores, Vendedores y Empresas de Bienes Raíces notifique, junto a la aprobación del examen de reválida, el término de noventa días disponible para someter toda la documentación necesaria para obtener la licencia de corredor de bienes raíces.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

| | |
|---|---|
| María Mercedes Fuentes Bonilla<br><br>Apelante<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Apelados | AC-2016-0116 |

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 22 de mayo de 2018.

El presente caso tiene su génesis en la presentación de un recurso de revisión judicial en el cual se alegó que la resolución final de una agencia violaba derechos constitucionales de la peticionaria al aplicarle una disposición reglamentaria. A su vez, se planteó la invalidez de la regla por ser arbitraria y caprichosa e infringir la doctrina de separación de poderes. Aunque en un principio el Tribunal de Apelaciones adjudicó el caso en sus méritos, luego de reconsiderar su dictamen desestimó el recurso. Ello, pues, concluyó que no tenía jurisdicción para atender las controversias planteadas, ya que debían presentarse ante el Tribunal de Primera Instancia.

En ese contexto, esta controversia permite que nos expresemos sobre el ámbito de competencia del Tribunal de Apelaciones para atender este tipo de recursos y que aclaremos nuestros pronunciamientos en JP v. Frente Unido I,

165 DPR 445 (2005), y <u>Centro Unido Detallistas v. Com. Seg. Pub.</u>, 174 DPR 174 (2008). Para ello, estamos llamados a realizar una evaluación integral y armoniosa de las disposiciones y principios relativos a la revisión de un dictamen final de una agencia administrativa. Veamos.

**I**

El 22 de diciembre de 2012 se notificó a la Sra. María Mercedes Fuentes Bonilla (señora Fuentes Bonilla o peticionaria) que aprobó el examen de reválida de corredora de bienes raíces. Poco más de seis meses después, el 28 de junio de 2013, presentó cierta documentación ante la Junta de Corredores, Vendedores y Empresas de Bienes Raíces (Junta) con el fin de obtener la licencia que la autorizara a ejercer esa profesión. La Junta denegó conceder la licencia porque los documentos fueron presentados fuera del término de noventa días que establece el Art. 17 del Reglamento de la Ley para Reglamentar el Negocio de Bienes Raíces en Puerto Rico (Reglamento Núm. 5567), Reglamento Núm. 5567 de 3 de abril de 1997.

Inconforme, la peticionaria solicitó la reconsideración del dictamen administrativo. En síntesis, adujo que el requisito de noventa días no surgía de la ley habilitadora de la Junta, por lo que había excedido los poderes delegados sobre ese asunto, y que se trataba de una disposición reglamentaria arbitraria y caprichosa que resultaba ser

inconstitucional.[1] Además, arguyó que aplicarle el plazo de noventa días violaba su debido proceso de ley porque no fue notificado con la aprobación del examen. Ante la inacción de la agencia en cuanto a la moción de reconsideración, la señora Fuentes Bonilla recurrió al Tribunal de Apelaciones. Allí, en gran medida, la peticionaria replanteó las alegaciones esbozadas en la moción de reconsideración.[2]

No obstante, el 14 de febrero de 2014 el foro apelativo desestimó el recurso. Determinó que faltaban por agotarse ciertos remedios administrativos, por lo que devolvió el caso a la Junta. Razonó que no se había notificado a la peticionaria de su derecho a que se celebrara un proceso adjudicativo de conformidad con la Sección 5.4 de la LPAU, *infra*, y el Art. 19 de la <u>Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico</u> (Ley para Reglamentar la Profesión de Corredor de Bienes Raíces), Ley 110-1994, según enmendada, 20 LPRA sec. 3042.[3]

Celebrada la vista administrativa ante la Junta, el 18 de diciembre de 2014 ésta reiteró su dictamen original. Señaló que la señora Fuentes Bonilla sometió los documentos necesarios para obtener la licencia 183 días después de habérsele notificado que aprobó el examen de corredores de

---

[1] *Solicitud de reconsideración*, Apéndice, págs. 64-67.

[2] *Solicitud de revisión administrativa* KLRA201300911, íd., págs. 76-86. Por su parte, la Oficina de la Procuradora General coincidió con la peticionaria en cuanto a que procedía notificar, de nuevo, a la peticionaria la aprobación del examen advirtiéndole de la existencia del término de noventa días para completar el trámite ante la Junta. *Escrito en cumplimiento de orden,* íd., pág. 95.

[3] *Sentencia,* íd., págs. 112-113.

bienes raíces. Concluyó que, como la disposición que establece el periodo de noventa días no había sido declarada inconstitucional o inválida, estaba obligada a cumplir con ella. Respecto a la notificación del término de noventa días, entre otras cosas, expuso que la notificación de los resultados de la reválida no era una decisión final, sino que se trataba de una notificación que daba comienzo al proceso de obtención de una licencia y que no incidía sobre las garantías del debido proceso de ley. Sostuvo que la peticionaria no tenía un interés propietario porque solo aprobó la reválida y no se había expedido la licencia a su favor. Finalmente, la Junta apercibió a la peticionaria de su derecho a solicitar la reconsideración de la resolución final de la agencia y de acudir en revisión del dictamen administrativo ante el Tribunal de Apelaciones.[4]

Así las cosas, la peticionaria acudió nuevamente al foro apelativo intermedio. Al igual que en su primera comparecencia, impugnó la legalidad de la disposición reglamentaria que impone un término de noventa días para completar los trámites de la licencia de corredores de bienes raíces. Asimismo, alegó que la falta de notificación sobre el plazo creado y de las consecuencias de su incumplimiento violaba su debido proceso de ley.[5] Por ello, adujo que, de sostenerse la validez de las disposiciones reglamentarias

---

[4] Véase la *Resolución*, íd., págs. 138-142.
[5] *Escrito de revisión administrativa* KLRA20150067, íd., págs. 28-30.

impugnadas, procedía que el caso fuera devuelto a la Junta para que realizara una notificación adecuada.

La Procuradora General, en representación de la parte recurrida, compareció y solicitó la desestimación del recurso por alegada falta de jurisdicción. En lo pertinente a la controversia que tenemos ante nuestra consideración, planteó que, en vista de que la peticionaria impugnaba la validez de un reglamento, el foro con jurisdicción para atender esos planteamientos era el Tribunal de Primera Instancia.[6] En la alternativa, en el caso de que el foro apelativo no acogiera su planteamiento jurisdiccional, defendió la corrección de la determinación administrativa y la validez de la reglamentación.

La peticionaria replicó el petitorio de la Oficina de la Procuradora General. Señaló que este Tribunal nunca había establecido que el Tribunal de Primera Instancia era el foro con jurisdicción exclusiva cuando se impugna un reglamento luego de un proceso adjudicativo administrativo. En su lugar, arguyó que el Tribunal de Apelaciones podía atender el caso en virtud de la Sec. 4.2 de la LPAU, *infra*.

El 31 de agosto de 2015 el foro intermedio apelativo emitió una *Sentencia* en la que resolvió a favor de la peticionaria y revocó la resolución emitida por la Junta. En apretada síntesis, concluyó que la Ley para Reglamentar la Profesión de Corredor de Bienes Raíces, *supra*, no establecía como requisito que los documentos necesarios para obtener la

---

[6] *Escrito en cumplimiento de orden,* íd., pág. 158.

licencia de corredor de bienes raíces fueran entregados en cierto término, por lo que la Junta había actuado en exceso a las facultades delegadas.[7] Razonó que se trataba de un término arbitrario que no se sustentaba en la ley habilitadora y que la peticionaria nunca fue notificada de la existencia del plazo de noventa días.[8]

Oportunamente, la Procuradora General en aquel entonces peticionó la reconsideración del dictamen. Reiteró que el foro apelativo carecía de jurisdicción conforme JP v. Frente Unido I, *supra*, y Centro Unido de Detallistas v. Comisión de Servicio Público, *supra*. Alegó que el Tribunal de Apelaciones es un foro con jurisdicción limitada y que lo procedente era desestimar el recurso.[9]

El Tribunal de Apelaciones reconsideró su determinación original. En definitiva, desestimó el recurso bajo la premisa de que el foro con jurisdicción para atender el caso era el Tribunal de Primera Instancia porque se impugnó la constitucionalidad de un reglamento.

No conteste con esa decisión, la peticionaria acudió ante esta Curia. Sostuvo, *inter alia*, que ambos foros tenían jurisdicción concurrente puesto que, principalmente, solicitaba la revisión de la determinación de un órgano administrativo.[10]

---

[7] *Sentencia*, íd., págs. 151-152.

[8] Íd., pág. 152.

[9] *Solicitud de reconsideración,* íd., pág. 202.

[10] Específicamente, la peticionaria señaló los dos errores siguientes:

"1. Erró el Tribunal de Apelaciones al dejar sin efecto su Sentencia del 32 de agosto de 2015 y declararse sin

El 27 de enero de 2017 acogimos el recurso como un *certiorari*. Expuesto el cuadro fáctico que antecede, con la comparecencia de las partes, resolvemos.

## II

### A. *Cuestiones sobre jurisdicción y competencia: en general*

La *jurisdicción* consiste en la autoridad o el poder que tiene el tribunal para atender y decidir un caso o controversia.[11] Reiteradamente hemos reconocido que las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia.[12] Como cuestión privilegiada, un planteamiento sobre jurisdicción en la materia puede hacerse en cualquier etapa del procedimiento.[13] En ese sentido, los tribunales tienen el deber ministerial de examinarla y evaluarla rigurosamente, ya sea porque fuera

jurisdicción para atender el recurso de revisión administrativa presentado, tras concluir que en armonía con lo resuelto en *J.P. v. Frente Unido, supra* y *Centro Unido de Detallistas v. Com. Serv. Pub., supra,* el Tribunal de Primera Instancia tiene jurisdicción primaria exclusiva para atender y adjudicar controversias sobre la constitucionalidad o validez de las reglas o reglamentos adoptados y aplicados a un ciudadano por una agencia.

2. Erró el Tribunal de Apelaciones al hacer extensivo su dictamen de falta de jurisdicción, amparándose en los casos de *J.P. v. Frente Unido, supra* y *Centro Unido de Detallistas v. Com. Serv. Pub., supra*, para no atender un asunto básico dentro de la jurisdicción general, a pesar de que concluyó que la Junta actuó en violación del debido proceso de ley, en su vertiente procesal, al no brindar una adecuada notificación del término de 90 días ni de las consecuencias de su incumplimiento".

[11] CIC Const. v. JMSP-UPR, 196 DPR 964, 972 (2016); Lozada Sánchez v. JCA, 184 DPR 898, 909 (2012), al citar a SLG Solá-Moreno v. Bengoa Becerra, 182 DPR 675, 682 (2011); Asoc. Punta las Marías v. ARPE, 170 DPR 253, 263 esc. 3 (2007). Véase además: Cordero v. ARPe, 187 DPR 445, 456-457 (2012).

[12] Horizon v. JTA. Revisora, RA Holdings, 191 DPR 228, 233-234 (2014); Muns. Aguada y Aguadilla v. JCA, 190 DPR 122, 131 (2014); Hernández Romero v. Pol. de PR, 177 DPR 121, 135 (2009); García v. Hormigonera Mayagüezana, 172 DPR 1, 7 (2007); JP v. Frente Unido, 165 DPR 445, 458-459 (2005).

[13] JP v. Frente Unido, *supra,* pág. 459; Aut. Desp. Sólidos v. Mun. San Juan, 150 DPR 106, 111 (2000) (Sentencia).

cuestionada o *motu proprio*, pues, por su naturaleza, incide directamente sobre el poder que tiene para adjudicar las controversias.[14] Según hemos precisado, la falta de jurisdicción

> […] trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio.[15]

Ahora bien, en el ejercicio de auscultar la jurisdicción de un foro judicial, debemos tener presente que nuestra Constitución dispone que "los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración".[16] Este precepto constitucional establece, además, la facultad de la Asamblea Legislativa, no de limitar nuestra jurisdicción, sino de determinar la competencia y organización de los tribunales.[17] En Rodríguez v. Registrador, 75 DPR 712, 722

---

[14] Horizon v. JTA. Revisora, RA Holdings, *supra*, pág. 234; Cordero v. ARPe, *supra*, pág. 457; JP v. Frente Unido, *supra,* pág. 459; Asoc. Dueños Casa Parguera, Inc. v. JP, 148 DPR 307, 312 (1999).

[15] Lozada Sánchez v. JCA, *supra*, pág. 909, al citar a González v. Mayagüez Resort & Casino, 176 DPR 848, 855 (2009); Págan v. Alcalde Mun. de Cataño, 143 DPR 314, 326 (1997); Lemar SE v. Vargas Rosado, 130 DPR 203, 207 (1992).

[16] Art. V, Sec. II, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 426. Véase además: Art. 2.001 de la Ley de la Judicatura de Puerto Rico de 2003 (Ley de la Judicatura de 2003), Ley 201-2003, según enmendada, 4 LPRA sec. 24b.

[17] Const. PR, *supra*, Art. V, Sec. II. El Informe de la Comisión de la Rama Judicial de la Convención Constituyente expresó que esta disposición

(1953), al citar con aprobación la obra <u>Notes and Comments on</u>

<u>the Constitution of the Commonwealth of Puerto Rico</u>,

reconocimos que el fin de este precepto constitucional era la

disposición rápida de los casos y el logro de decisiones en

sus méritos, y no a base de tecnicismos de jurisdicción.

---

establece la completa unificación de los tribunales de Puerto Rico. La unificación de los tribunales produce, entre otros efectos, la eliminación de problemas técnicos de jurisdicción. El poder legislativo queda, no obstante, facultado para determinar la competencia de los tribunales y para disponer que de acudir un litigante a un tribunal distinto al indicado por las leyes sobre competencia, la parte contraria puede solicitar y obtener el traslado de la causa, o el tribunal motu proprio puede así disponerlo. La Asamblea Legislativa queda así mismo [sic] facultada para autorizar la revisión judicial de resoluciones sobre traslados.

La Comisión recomienda la adopción de este sistema integrado a los fines de asegurar el logro de los siguientes objetivos:

(1) La mayor eficiencia en el ejercicio del poder judicial.
(2) Una distribución equitativa del trabajo de las cortes que permita la mayor rapidez en los procedimientos judiciales evitando la congestión de causas pendientes en los tribunales.
(3) [É]nfasis en el principio de especialización de jueces en lugar de la especialización de tribunales, evitándose así la necesidad de tribunales o salas adicionales o de crear un número excesivo de plazas de jueces.
(4) Reducción del costo por caso al erario público.
(5) La mayor flexibilidad en la administración de la justicia.

Este sistema judicial integrado que recomendamos eliminará en los litigios las cuestiones técnicas de jurisdicción. Dentro del sistema que hasta ahora ha prevalecido en Puerto Rico a menudo se derrotaban los fines de la justicia y se perjudicaban irremediablemente los derechos de litigantes por haber éstos acudido a tribunales que, según dicho sistema, carecían, por razones sumamente técnicas, de jurisdicción para conocer en su causa. Frecuentemente se descubría el error técnico cuando ya el litigante había incurrido en gastos y pérdida de tiempo. El establecimiento de este sistema judicial unificado que se recomienda eliminará de manera absoluta todas estas deficiencias. Por otro lado, se reserva el poder legislativo la facultad de disponer por ley sobre la competencia de los tribunales incluyendo el lugar donde deben ventilarse los litigios. Un error por razón de competencia podrá siempre ser subsanado a petición de las partes o por disposición del tribunal sin que se perjudiquen fatalmente los derechos de los litigantes".
4 Diario de Sesiones de la Convención Constituyente 2609 (1961). Véase además: <u>Horizon v. JTA. Revisora, RA Holdings</u>, *supra*, pág. 234.

Con la aprobación de la Constitución de Puerto Rico "nuestros tribunales dejaron de funcionar como células u órganos separados e independientes. A partir de ese momento pasaron a formar una sola organización, un solo conjunto, un tribunal único".[18] Desde entonces los tribunales de Puerto Rico ——actualmente el Tribunal de Primera Instancia, el Tribunal de Apelaciones y el Tribunal Supremo de Puerto Rico—— componen un Tribunal General de Justicia que, tanto legislativa como constitucionalmente, cuenta con una sola jurisdicción.[19] Sin duda, la adopción del Art. V, Sec. II de la Constitución de Puerto Rico, evolucionó algunos aspectos que hasta entonces se trataban como asuntos de "jurisdicción" transformándolos en una nueva categoría que actualmente conocemos como "competencia".

La *competencia* es la forma en cómo se canaliza la jurisdicción a través de los foros judiciales.[20] Conforme expresamos después de la aprobación de la Constitución de Puerto Rico y de la Ley de la Judicatura de 1952, la distinción entre la jurisdicción y la competencia está coordinada con la diferencia entre el poder del tribunal y la conveniencia de los litigantes, los tribunales y los testigos.[21] Así pues, las normas de competencia lo que buscan es establecer la tramitación ordenada de los asuntos

---

[18] Íd., pág. 234; <u>Freire Ayala v. Vista Rent</u>, 169 DPR 418, 441 (2006).

[19] Véase Ley de la Judicatura de 2003, *supra*, 4 LPRA sec. 24b. Véase además: <u>Freire Ayala v. Vista Rent</u>, *supra*, pág. 441.

[20] <u>Horizon v. JTA. Revisora, RA Holdings</u>, *supra*, pág. 235.

[21] <u>Rodríguez v. Registrador</u>, 75 DPR 712, 717 (1953).

judiciales dentro de nuestro sistema de jurisdicción unificada.[22] Por ello, como norma general, a través de la legislación promulgada podemos identificar cómo ésta se ha instituido a través de los foros judiciales.

### B. La creación de un Tribunal de Apelaciones para entender sobre recursos de revisión judicial

A través de los años la forma en la cual se ha erigido la competencia de los tribunales para revisar las actuaciones de las agencias administrativas ha evolucionado. Inicialmente, luego de la aprobación de la Constitución de Puerto Rico en 1952, el Tribunal General de Justicia estaba compuesto por el Tribunal Supremo y un Tribunal de Primera Instancia. Este último, a su vez, estaba conformado por el Tribunal Superior, el Tribunal de Distrito y el Tribunal Municipal.[23] En aquel entonces era el Tribunal Superior el que funcionaba como una especie de foro apelativo intermedio que revisaba las determinaciones del Tribunal de Distrito y el Tribunal Municipal; así como las decisiones de las agencias administrativas que no eran de la competencia del Tribunal Supremo.

Tras múltiples reformas judiciales para crear un foro apelativo intermedio,[24] la Ley de la Judicatura de Puerto

---

[22] Lemar SE v. Vargas Rosado, *supra*, pág. 207.

[23] Véase Ley de la Judicatura de 1952, Ley Núm. 11 de 24 de julio de 1952 (1952 Leyes de Puerto Rico 37).

[24] Véanse: Ley Núm. 21 de 13 de julio de 1992 (1992 (Parte 1) Leyes de Puerto Rico 131); Ley de la Judicatura de 1994, Plan de Reorganización Núm. 1 de 28 de julio de 1994. Estas reformas, y sus enmiendas correspondientes, fueron incrementando la competencia de los foros judiciales apelativos intermedios para revisar las actuaciones de las agencias administrativas. Véase, e.g., Ley Núm. 248 de 25 de diciembre de 1995.

<u>Rico de 2003</u> (Ley de la Judicatura de 2003), Ley 201-2003, según enmendada, 4 LPRA sec. 24 *et seq.*, instituyó el Tribunal de Apelaciones actual. Su promulgación tuvo el objetivo de lograr un sistema de justicia de mejor calidad, rápido, económico y accesible.[25] En virtud de esta premisa, la Ley de la Judicatura de 2003 reconoce que el Tribunal de Apelaciones "deberá cumplir con el objetivo […] de dar mayor acceso a la ciudadanía a los procesos judiciales"; así como de "ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos".[26] Acorde con lo anterior, los Arts. 4.002 y 4.006 de la ley preceptúan la obligación del Tribunal de Apelaciones de atender los recursos de revisión judicial.[27] De hecho, en lo pertinente, el Art. 4.006, el cual regula expresamente la competencia del foro apelativo intermedio, establece que estos recursos "se acoger[án] como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos y agencias administrativas", y que el

---

[25] Exposición de Motivos de la Ley de la Judicatura de 2003, *supra*. (2003 (Parte 1) Leyes de Puerto Rico 971).

[26] Art. 4.002 de la Ley de la Judicatura de 2003, *supra*, 4 LPRA sec. 24u.

[27] Íd. Aunque la Ley de la Judicatura, según aprobada originalmente, disponía que las decisiones finales de las agencias administrativas serían revisadas discrecionalmente por el foro intermedio, esto fue enmendado posteriormente a los fines de aclarar que la revisión se realizara como cuestión de derecho. Véase Art. 4.002 de la Ley de la Judicatura de 2003, *supra*. (2003 (Parte 1) Leyes de Puerto Rico 984); Ley 466-2004. Por su parte, el Art. 9.004 de la Ley de la Judicatura de 2003 estableció que los Arts. 4.002 y 4.006 no tendrían vigencia inmediata y las revisiones se realizarían discrecionalmente hasta que la Ley de Procedimiento Administrativo Uniforme, *infra*, fuera enmendada para ajustarla a este nuevo lenguaje. Ley de la Judicatura de 2003, *supra*. (2003 (Parte 1) Leyes de Puerto Rico 996).

procedimiento a seguir es de acuerdo a lo establecido en la LPAU, *infra.*[28]

Esto nos lleva a analizar las disposiciones de la LPAU, *infra*, y la jurisprudencia emitida por este Tribunal, de modo que determinemos si, en efecto, el foro apelativo intermedio tiene competencia para entender sobre las controversias que fueron planteadas.

## III

La competencia del Tribunal de Apelaciones para revisar las actuaciones administrativas está articulada, principalmente, en las Secs. 2.7 y 4.2 de la Ley de Procedimiento Administrativo Uniforme de Puerto Rico (LPAU), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA secs. 2127 y 2172, respectivamente, vigentes al momento de presentarse el recurso de revisión ante el Tribunal de Apelaciones.[29] Examinamos, a continuación, lo pautado en la Sec. 2.7.

### A. *La revisión de las reglas o reglamentos administrativos*

La Sec. 2.7(b) de la LPAU preceptúa el foro con competencia para dilucidar la validez de una regla o

---

[28] (Énfasis suplido). Art. 4.006 de la Ley de la Judicatura de 2003, *supra*, 4 LPRA sec. 24y. Véase además: Alonzo Reyes v. ASC, 185 DPR 861, 875-876 (2012); Fund. Surfrider y otros v. ARPe, 178 DPR 563, 573-574 (2010). Conforme a ello, el Reglamento del Tribunal de Apelaciones reguló lo concerniente a la revisión de las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por las agencias administrativas en las reglas 56 a la regla 67, ya sea en su función adjudicativa o cuasi legislativa.

[29] Cabe aclarar que la Ley de Procedimiento Administrativo Uniforme de Puerto Rico (LPAU), Ley Núm. 170 de 12 de agosto de 1988, estaba vigente al momento de acudirse al foro apelativo intermedio. En el 2017 se promulgó la Ley Núm. 38-2017, la cual no permitió que la Ley Núm. 210-2016 entrara en vigor y alterara el lenguaje de las disposiciones a que se hace referencia en esta Opinión. Actualmente, estas se encuentran incorporadas en la Ley 38, *supra*.

reglamento que se impugna de su faz por el incumplimiento con las disposiciones del propio estatuto. En lo atinente, ésta instituye que

> [c]ualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento con las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente.[30]

Según hemos reconocido, esta sección provee un mecanismo mediante el cual cualquier persona interesada puede impugnar la validez de una regla o reglamento.[31] Para promover la acción en el Tribunal de Apelaciones, no se requiere que quien impugne tenga que probar cómo se afecta de manera individualizada por su aplicación.[32] Este es el beneficio de la acción que instaura esta sección: concede por la ley legitimación a las personas interesadas para impugnar de su faz una regla o reglamento en el Tribunal de Apelaciones porque existe un interés general que se pretende proteger. Ese interés general, que permite la impugnación de su faz de un reglamento, "se circunscribe a los casos en que se alegue el incumplimiento con las garantías procesales de la propia ley".[33]

---

[30] LPAU, *supra*, 3 LPRA sec. 2127.

[31] Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 121 (2002). Véase además: J. M. Farinacci Fernós, Cualquier persona: La facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria, 84 Rev. Jur. UPR 359, 371 (2015).

[32] JP v. Frente unido I, *supra*, pág. 463; Centro Unido Detallistas v. Com. Serv. Pub., 174 DPR 174, 186 (2008).

[33] Centro Unido Detallistas v. Com. Serv. Púb., *supra*, pág. 186.

Sin embargo, surge diáfanamente que la acción fijada en la Sec. 2.7 debe presentarse dentro de los primeros treinta días siguientes a que la reglamentación entre en vigor. En ese sentido, la legitimación que confiere para acudir al Tribunal de Apelaciones, sin que se tenga que probar la aplicación particular de la regla o reglamento, posee duración limitada. Trascurrido este plazo no podría presentarse la acción de nulidad al amparo de esta sección ya que se trata de un término jurisdiccional.[34]

### B. La revisión de una orden o resolución final proveniente de un proceso administrativo adjudicativo

Además de la impugnación establecida en la Sec. 2.7, la LPAU erige la revisión de las actuaciones administrativas en su Capítulo IV. Al hacerlo, expresa que sus disposiciones "serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión", excepto las que allí se enumeran.[35] Así, la ley

> define el ámbito de la facultad revisora de los tribunales sobre las determinaciones cuasiadjudicativas [sic] de las agencias públicas. […] Reconoce que es responsabilidad de los foros judiciales asegurarse de que el ente administrativo actúe dentro del marco de los poderes que le han sido delegados, y de conformidad con la política pública que lo dirige. La revisión judicial garantiza […] un foro al cual recurrir para vindicar sus derechos y reclamar un remedio frente

---

[34] Grupo HIMA v. Depto. de Salud, 181 DPR 72, 86 (2011); Asoc. Dueños Casas Parguera, Inc. v. JP, supra.

[35] Sec. 4.1 de la Ley de Procedimiento Administrativo Uniforme de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada. (3 LPRA sec. 2171).

a posibles actuaciones arbitrarias de las agencias públicas en un dictamen administrativo.[36]

La Sec. 5.4 de la LPAU señala que "[t]oda persona a la que una agencia deniegue la concesión de una licencia […] o gestión similar tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo".[37] Precisamente, la *adjudicación* de una agencia, según definido por la LPAU, es el "pronunciamiento mediante el cual una agencia determina los derechos, [las] obligaciones o [los] privilegios que correspondan a la parte".[38] Por ende, luego de la determinación final de la agencia en cuanto a la solicitud de la licencia, entran en juego las disposiciones que regulan los requisitos y la forma de presentar un recurso de revisión ante el Tribunal de Apelaciones.

Como mencionáramos, la competencia del Tribunal de Apelaciones para efectuar la revisión de las determinaciones administrativas, en su función adjudicativa, salvo se disponga lo contrario en una ley posterior, está regulada por la Sec. 4.2 de la LPAU. Ésta establece que

> [u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro del término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la

---

[36] Unlimited v. Mun. de Guaynabo, 183 DPR 947, 965 (2011).

[37] Sec. 5.4 de la LPAU, *supra,* 3 LPRA sec. 2184.

[38] Sec. 1.3 de la LPAU, *supra,* 3 LPRA sec. 2102 (b). Véanse además: Muns. Aguada y Aguadilla v. JCA, *supra*, pág. 137; Mun. de San Juan v. Jta. Planificación, 189 DPR 895, 911 (2013); Mun. de Toa Baja v. DRNA, 185 DPR 684, 694 (2012); ARPe v. Coordinadora, 165 DPR 850, 871 (2005). Mun. de San Juan v. Jta. Planificación, *supra*, pág. 911; Claro TV y Junta Regl. Tel. v. One Link, 179 DPR 177, 201 (2010); JP v. Frente Unido I, *supra*, págs. 463-464.

notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las disposiciones en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […]

. . . . . . . .

La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de esta Ley.[39]

Esta disposición de la ley instituye el ámbito de la revisión judicial de las agencias administrativas, cuándo procede y quién tiene acción legitimada para instar el recurso.[40] Debe notarse que el mecanismo de revisión a que se refiere esta sección es a "la solicitud de intervención judicial que hace una parte con relación a la decisión efectuada por una agencia administrativa".[41] Al hacerlo, la LPAU canaliza la jurisdicción de los tribunales en este tipo de recursos a través del Tribunal de Apelaciones. Además, limita la revisión a las decisiones que cumplan con dos requisitos: *primero*, que trate de órdenes o resoluciones finales; y, *segundo*, que la parte adversamente afectada haya agotado todos los remedios provistos por la agencia

---

[39] Sec. 4.2 de la LPAU, *supra*, 3 LPRA sec. 2172. La Sec. 4.6 de la LPAU reconoce, al igual que la Ley de la Judicatura de 2003, que "[e]l Tribunal de Apelaciones revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". Íd., sec. 2176.

[40] AEE v. Rivera, 167 DPR 201, 217 (2006) (Opinión disidente del Juez Asociado Señor Rivera Pérez).

[41] Alonzo Reyes v. ASC, 185 DPR 861, 874-875 (2012), al citar a D. Fernández Quiñones, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, pág. 517.

administrativa.[42] Se erige, de hecho, que este es el mecanismo **exclusivo** para revisar los méritos de una decisión administrativa en un proceso adjudicativo o de naturaleza informal que haya sido emitido al amparo de esa ley.

## IV

Como señala la Oficina del Procurador General, la Sec. 2.7 de la LPAU no aplica al caso de autos, puesto que la acción que allí se crea tiene que presentarse dentro del término de treinta días desde la vigencia del reglamento que se impugne a su amparo. Sin embargo, la controversia en este caso se generó ya que en JP v. Frente Unido I, *supra*, pág. 463, y Centro Unido Detallistas v. Com. Serv. Pub., *supra*, págs. 184-185, expresamos que pasado el término de treinta días que dispone la Sec. 2.7, *supra*, "cualquier persona afectada por la aplicación de una regla o reglamento aprobado por la agencia administrativa podrá impugnar su validez constitucional, en cualquier momento, ante el Tribunal de Primera Instancia".[43] Así pues, la Oficina del Procurador General fundamentó su postura en esto para sostener que el foro apelativo intermedio estaba impedido de atender los errores señalados por la peticionaria. Específicamente, arguye que en la referida jurisprudencia limitamos la jurisdicción del Tribunal de Apelaciones y concedimos al Tribunal de Primera Instancia la facultad exclusiva de

---

[42] Tosado v. AEE, 165 DPR 377, 384 (2005); Procuradora Paciente v. MCS, 163 DPR 21, 34-35 (2004); J. Exam. Tec. Med. V. Elias *et al.*, 144 DPR 483, 489 (1997).

[43] JP v. Frente Unido I, *supra*, pág. 463. Véase además: Centro Unido Detallistas v. Com. Serv. Pub., *supra*, págs. 184-185.

revisar la validez de un reglamento, transcurrido el término señalado en la Sec. 2.7 de la LPAU. Si bien una parte de los planteamientos de la peticionaria se realizaron con el propósito de impugnar un reglamento administrativo que le fue aplicado, la interpretación que la Oficina del Procurador General quiere dar a nuestras expresiones es incorrecta.

En JP v. Frente Unido I, *supra*, se cuestionó la validez del Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico, Reglamento de Planificación Núm. 28 de la Junta de Planificación de 13 de febrero de 2004. Empero, dicha impugnación se realizó dentro del término dispuesto en la Sec. 2.7 de la LPAU y sin que se aplicara a algún individuo particular luego de un proceso adjudicativo.[44] Nuestra función se circunscribió a tres asuntos: *primero*, determinar si la Junta de Planificación había presentado oportunamente una moción de reconsideración ante el Tribunal de Apelaciones; *segundo*, determinar si varios municipios eran parte con derecho a ser notificados del recurso de revisión judicial; y, entonces, en *tercer lugar*, pasar juicio sobre la legalidad del reglamento impugnado.[45] Concluimos que se trataba de un caso que surgía de un proceso de reglamentación en el cual no se hacía ninguna determinación específica sobre los derechos y obligaciones de alguna persona, sino que se establecían

---

[44] Véase, e.g., Luan Investment Corp. v. Román, 125 DPR 533, 547 (1990).

[45] Véase JP v. Frente Unido I, *supra*, pág. 454.

normas de aplicación general.[46] Fue por esto que únicamente hicimos referencia a lo señalado en la Sec. 2.7 y dictaminamos que no aplicaba la Sec. 4.2 de la LPAU.

Por otra parte, en Centro Unido Detallistas v. Com. Serv. Pub., *supra*, la interrogante se limitaba a si la Sec. 2.7 de la LPAU, *supra*, aplicaba únicamente al impugnarse faltas relacionadas con el proceso de reglamentación señalado en dicha ley o si se extendía a requisitos establecidos en legislación distinta. El análisis que realizamos fue sencillo, toda vez que la Sec. 2.7 es clara al crear la acción de nulidad. Resolvimos que ésta se restringía a impugnaciones por el incumplimiento sustancial con la LPAU. Para ello, hicimos la salvedad de que "la acción de impugnación reglamentaria provista por [la Sec. 2.7 de] la L.P.A.U. es distinta de cualquier proceso que pueda entablar un ciudadano agraviado por la acción de una agencia, bien tras un procedimiento de adjudicación o a raíz de la aplicación de un reglamento que, a su entender, carezca de validez".[47] Expresamos que la distinción respondía, fundamentalmente, a

> [...] que los tribunales ordinariamente examinan la validez de los reglamentos *de forma colateral.* Por lo general, el foro judicial no interviene directamente con la acción de la agencia al adoptar sus reglamentos, sino que la revisión se produce a través de pleitos particulares en los que se cuestionan las determinaciones tomadas por las agencias al amparo de éstos. Esas acciones normalmente están relacionadas con intentos

---

[46] Íd., pág. 465.

[47] Centro Unido Detallistas v. Com. Serv. Pub., *supra*, pág. 185, al hacer referencia a Asoc. Dueños Casas Parguera, Inc. v. JP, *supra*, pág. 315 esc. 4; Fernández Quiñones, op. cit., págs. 120-122.

*concretos* de aplicar la regla impugnada. Por eso, en la práctica, el interdicto, la sentencia declaratoria y el propio procedimiento para hacer cumplir la resolución de la agencia son los mecanismos más utilizados al revisar la validez de las reglas administrativas. Véase D. Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, 69 (Núm. 4) Rev. Jur. U.P.R. 1129, 1147-1148 (2000). *E.g. Asociación de Maestros v. Comisión,* supra; *Hernández v. Col. Optómetras,* supra.[48]

Lo que allí esbozamos no debe malinterpretarse. Al revisitar los orígenes de nuestros pronunciamientos, debemos advertir que éstos se sustentaron en Asoc. Dueños Casas de la Parguera, Inc. v. JP, 148 DPR 307 (1999), cuya situación está muy lejos de la que tenemos ante nos. En aquel momento tuvimos que resolver cuál es el término para impugnar un plan de uso de terrenos aprobado por la Junta de Planificación.[49] En ningún momento señalamos que la validez de un reglamento podía revisarse exclusivamente ante el foro de instancia y que, transcurrido el plazo de treinta días de la Sec. 2.7 de la LPAU, ese ejercicio estaba excluido de un proceso al amparo de otra disposición de la ley. Además, es importante precisar que este caso se produjo en el proceso de transición establecido por la Asamblea Legislativa al promulgar la Ley de la Judicatura de 1994 y enmendar la LPAU a los propósitos de instituir al Tribunal de Circuito de Apelaciones como el foro revisor de las actuaciones administrativas.[50] Por ello,

---

[48] Centro Unido Detallistas v. Com. Serv. Pub., *supra*, pág. 185.

[49] El caso fue desestimado por falta de jurisdicción, pues el recurso había sido presentado fuera del término establecido en la ley para ese tipo de casos.

[50] Asoc. Dueños Casas de la Parguera, Inc., *supra*, pág. 313 esc. 2. En este caso la Sec. 2.7 de la LPAU que se utilizó no hacía referencia al Tribunal de Circuito de Apelaciones, sino al Tribunal Superior.

las normas sobre competencia que aplicamos en aquel entonces eran distintas a las que debemos interpretar en esta ocasión.

Nótese que en aquellas ocasiones no tuvimos que resolver si era posible examinar la constitucionalidad de una regla al revisar un dictamen final de una agencia, como sucede en el caso ante nos. Por ello, lo que articulamos no estuvo dirigido a limitar la competencia y el alcance de la revisión que puede realizar el Tribunal de Apelaciones cuando se recurre de la determinación final de una agencia administrativa. Debemos tener presente que nuestros pronunciamientos manaron de recursos que se presentaron exclusivamente en virtud de la Sec. 2.7, y no al amparo de la Sec. 4.2 de la LPAU. Indudablemente no aplicaría la Sec. 2.7 si pasara el término de treinta días que allí se dispone o si la acción que se desea presentar no está dentro de su alcance, como decidimos en Centro Unido Detallistas v. Com. Serv. Púb., *supra*.[51] Empero, esto no se traduce en que el Tribunal de Apelaciones no tenga la facultad para adjudicar las controversias en virtud de otras disposiciones de la LPAU. La casuística de este Tribunal lo demuestra. Incluso luego de JP v. Frente Unido I, *supra,* y Centro Unido Detallista v. Com. Serv. Púb., *supra*, este Tribunal ha pasado juicio sobre la validez de cierta reglamentación como parte de la revisión final de la actuación administrativa.

Por ejemplo, en López Rivera v. Adm. de Corrección, 174 DPR 247 (2008), tuvimos que evaluar la validez de la Regla 20

---

[51] Véase además: Martínez v. Depto. del Trabajo, 145 DPR 588, 592 (1998).

del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, Reglamento Núm. 6994 de 29 de julio de 2005, que establecía un término de cinco días para solicitar la reconsideración del dictamen administrativo. La polémica se suscitó tras que se instara una querella contra una persona confinada, el Sr. Bonifacio López Rivera (señor López Rivera), y la agencia le cancelara la bonificación por buena conducta acumulada por infringir el referido reglamento. El señor López Rivera no solicitó reconsideración del dictamen dentro del plazo de cinco días notificado en la resolución. Por el contrario, en virtud del periodo de veinte días dispuesto en la Sec. 3.15 de la LPAU, *supra,* presentó su petitorio trece días después de que se notificara la determinación de la agencia.

Debido a que la Administración de Corrección no acogió la reconsideración por haber trascurrido el término establecido en el reglamento, el señor López Rivera acudió al Tribunal de Apelaciones. Planteó que la Regla 20 violaba su debido proceso de ley y era contraria a la LPAU.[52] El foro apelativo confirmó la determinación de la agencia. Resolvió que la reglamentación en cuestión se justificaba en las excepciones contenidas en la LPAU para el manejo de emergencias y de situaciones de acción inmediata en procesos adjudicativos.

---

[52] Nótese que se trata de un recurso con señalamientos de error similares a los del caso de autos.

Atendido el caso, invalidamos la disposición reglamentaria mediante la revisión judicial de la decisión administrativa. Concluimos que "ni la LPAU ni la Ley Orgánica de la Administración de Corrección autoriza[ban] a la agencia a desviarse por vía reglamentaria de los parámetros temporales que establece la […] Sec. 3.15 de la LPAU para los supuestos en que una parte solicita la reconsideración".[53] Aunque este Tribunal expresó que la regla se invalidaba en virtud de la Sec. 2.7 de la LPAU, *supra*, la realidad es que la impugnación de la disposición reglamentaria se logró mediante la revisión del proceso adjudicativo ante la agencia. Ello, pues, cuando se recurrió al Tribunal de Apelaciones, había trascurrido aproximadamente un año desde la promulgación y entrada en vigor del reglamento impugnado. Sin duda, esto excluía la revisión judicial que dispone la Sec. 2.7, *supra*.

Asimismo, en OEG v. Santiago Guzmán, 188 DPR 215 (2013), el Sr. Pedro Julio Santiago Guzmán (señor Santiago Guzmán) recurrió al Tribunal de Apelaciones para que revisara una determinación de la Oficina de Ética Gubernamental (OEG). En síntesis, esta última impuso al señor Santiago Guzmán una multa de $ 2,000 por infringir varias disposiciones estatutarias. Una vez llegó el caso ante nuestra consideración, pasamos revista sobre la legalidad de ciertas disposiciones del Reglamento para la Tramitación de Dispensas para el Nombramiento, Promoción, Ascenso y Contratación de

---

[53] Véase López Rivera v. Adm. de Corrección, 174 DPR 247, 259-261 (2008).

Parientes, Reglamento Núm. 6450 del Departamento de Hacienda, de 2 de mayo de 2002. Este ejercicio se realizó con el objetivo de verificar si las imputaciones contra el señor Santiago Guzmán, en efecto, habían sido cometidas y procedía la multa impuesta. Al así hacerlo, reconocimos que la invalidez de su faz de una regla legislativa podía surgir por el incumplimiento sustancial con las disposiciones de la LPAU; pero, también, podía invalidarse "porque en su aplicación, la regla no se ajusta a los poderes que le delegó la Legislatura a la agencia administrativa que la promulgó".[54] Tras comparar varias reglas con la Ley de Ética Gubernamental, resolvimos que éstas no se ajustaban al poder que delegó la Asamblea Legislativa.

De igual manera, en Ayala Hernández v. Consejo de Titulares, 190 DPR 547 (2014), se tuvo que analizar si el Departamento de Asuntos del Consumidor (DACo) había actuado correctamente al declarar nulo parte de un reglamento de un condominio, cuando la Sec. 26 del Reglamento sobre Condominios Núm. 6728 del DACo, de 2 de diciembre de 2003, señalaba que no tenía autoridad para hacerlo. El Tribunal de Apelaciones revocó parcialmente la decisión administrativa porque la Sec. 26 limitaba su jurisdicción para atender la validez y legalidad del reglamento del condominio en cuestión.[55]

---

[54] OEG v. Santiago Guzmán, 188 DPR 215, 225 (2013).

[55] Específicamente, la Sec. 26 del Reglamento Núm. 6728 del DACo, supra, establecía que toda reclamación que consistiera en cuestionar un reglamento de un condominio, y dicho reglamento estuviera inscrito en el

Así las cosas, estuvimos precisados a examinar la Sec. 26 del Reglamento Núm. 6728, *supra*.[56] Aunque la revisión sobre la legalidad del reglamento del DACo se realizó por este Tribunal y no por el Tribunal de Apelaciones, ciertamente hubiéramos estado impedidos de hacer tal evaluación si éste no podía realizarla. Después de todo nuestra función revisora encuentra los mismos límites que en el Tribunal de Apelaciones, con la diferencia de que se efectúa en una etapa posterior.[57]

Observamos que el caso presentaba un escenario anómalo, ya que la agencia no obedeció su propio reglamento al asumir jurisdicción en el caso. Empero, también expresamos que es requisito que el reglamento promulgado por una agencia esté dentro de los parámetros establecidos en su ley orgánica.[58] Encontramos que la ley confería autoridad al DACo para adjudicar controversias relativas a la impugnación de reglamentos en circunstancias como las que presentaba el caso, contrario a lo que establecía el Reglamento Núm. 6728. Por ello, resolvimos que el DACo no podía coartar, mediante reglamentación, la jurisdicción que la Legislatura le confirió expresamente, como lo hizo en la Sec. 26.[59]

---

Registro de la Propiedad, debía ventilarse en el Tribunal de Primera Instancia.

[56] En la Opinión señalamos que para resolver la controversia era importante e imprescindible justipreciar la Sec. 26 del Reglamento Núm. 6728. Íd., pág. 569 esc. 17.

[57] Véase Sec. 4.7 de la LPAU, *supra*, 3 LPRA sec. 2177.

[58] Ayala Hernández v. Consejo de Titulares, 190 DPR 547, 568-569 (2014).

[59] Para otros casos, véanse, e.g.: Danosa Caribean, Inc. v. Neg. Asis. Contr., 185 DPR 1008 (2012); Sánchez v. Depto. Vivienda, 184 DPR 95 (2011); Tosado v. AEE, 165 DPR 377 (2005) (Tuvimos que evaluar el procedimiento disciplinario interno por cargos presentados contra

**V**

El análisis sobre la facultad revisora del Tribunal de Apelaciones no se debe dar en el vacío. La revisión forma parte de un trámite judicial cuyo diseño responde a proveer mayor acceso a los tribunales y su existencia es un repudio al principio de que la eficiencia de la reglamentación lo derrota todo.[60] Como es sabido, la revisión judicial se ejerce no solo en consideración de los propósitos del trámite administrativo, sino a la importante función que tiene el tribunal dentro del esquema que entrelaza las Ramas de

---

empleados gerenciales de la Autoridad de Energía Eléctrica (AEE). Aunque el enfoque principal de nuestra decisión estuvo dirigido a comprobar si la decisión recurrida constituía una resolución final, este Tribunal pasó juicio sobre la capacidad de la AEE para reglamentar el procedimiento disciplinario mediante el Manual sobre Procedimientos Disciplinarios para Empleados Unionados y Gerenciales de la Autoridad de Energía Eléctrica. Concluimos, como parte de la revisión, que la AEE "podía reglamentar el procedimiento disciplinario aludido mediante el referido manual sin que ello se entienda como un subterfugio del procedimiento de reglamentación pautado en la L.P.A.U.". Íd. pág. 392); Perfect Cleaning v. Cardiovascular, 162 DPR 745 (2004) (Declaramos *ultra vires* que mediante reglamento se establecieran requisitos jurisdiccionales adicionales para poder acudir a la revisión judicial de un proceso de subastas); Pérez v. Com. Rel. Trab. Pub., 158 DPR 180 (2002) (Como parte de la revisión de la determinación del Tribunal de Circuito de Apelaciones y del dictamen final administrativo, tuvimos que analizar la validez del Art. 701 del Reglamento de la Comisión. Aunque nuestro dictamen sobre la facultad del foro apelativo para revisar la determinación de la Comisión se realizó al amparo del Art. 10, Sec. 10.1 de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998, según enmendada (3 LPRA sec. 1452d), esta ley lo que hacía era reconocerle competencia al entonces Tribunal de Circuito de Apelaciones para entender sobre recursos de revisión de *órdenes y resoluciones finales* de la Comisión de conformidad con la LPAU. En otros términos, conforme se establecía en la Sec. 4.2 de la LPAU); Caribe Comms., Inc. v. PRTCo, 157 DPR 203 (2002) (Resolvimos que la Junta Reglamentadora de Telecomunicaciones había excedido los poderes delegados al establecer mediante reglamento que tenía la facultad de ordenar la compensación por daños en todo tipo de caso); Franco v. Depto. de Educación, 148 DPR 703 (1999); Aulet v. Depto. Servicios Sociales, 129 DPR 1, 38 (1991) (Revocado en otros aspectos) (Aunque no existía el Tribunal de Apelaciones, mediante la revisión que al presente realiza éste último, evaluamos si ciertas disposiciones reglamentarias eran arbitrarias y caprichosas).

[60] Méndez v. Corporación Quintas de San Luis, 127 DPR 635, 637 (1991); Sackett v. EPA, 566 US 120, 130 (2012) ("[…] presumption of judicial review is a repudiation of the principle that efficiency of regulation conquers all").

gobierno.[61] En concordancia con lo anterior, "[e]n la faena de interpretar las leyes es nuestra obligación 'armonizar, siempre que sea posible, todos aquellos estatutos involucrados en la solución de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable' que represente y salvaguarde la efectividad de la intención legislativa".[62] Por ello, nuestra interpretación de la competencia otorgada al Tribunal de Apelaciones mediante la Ley de la Judicatura de 2003 y la LPAU toma en cuenta los principios fundamentales por los cuales se creó el referido foro judicial; así como la trascendencia y el alcance de la revisión que se realiza de los dictámenes administrativos que, finalmente, adjudican los derechos y obligaciones de las partes en el proceso.

En ese sentido, pese a que en Centro Unido Detallistas v. Com. Serv. Pub., *supra*, y JP v. Frente Unido I, *supra*, expresamos que pasado el término de treinta días que establece la LPAU en su Sec. 2.7 la parte que desee impugnar una regla o reglamento, incluso constitucionalmente, puede acudir al Tribunal de Primera Instancia, ello no significó que únicamente ante este último foro era posible cuestionar una disposición reglamentaria. Debemos tener presente el contexto en que emitimos esas expresiones y las demás disposiciones de la LPAU. Con ellas lo único que hicimos fue reconocer que, en la práctica, comúnmente, la legalidad de

---

[61] Ind. PR v. JP y AAA, 142 DPR 656, 671 (1997).

[62] Mun. de Aguada y Aguadilla v. JCA, *supra*, pág. 142, al citar a IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 741 (2012).

las reglas o reglamentos administrativos se analiza mediante otros mecanismos disponibles ante el Tribunal de Primera Instancia. A eso se restringían nuestras expresiones.

En las múltiples ocasiones en que se creó un nuevo foro apelativo intermedio, la Asamblea Legislativa dejó establecido siempre su objetivo de crear un sistema judicial verdaderamente unificado, rápido, eficiente y económico; que proveyera justicia apelativa y fuera accesible a la ciudadanía. Esto también se consignó en la Ley de la Judicatura de 2003 al disponerse el deber del Tribunal de Apelaciones de dar mayor, fácil y efectivo acceso a los procesos judiciales, y el deber de impartir justicia apelativa a las personas con reclamos válidos.[63]

Cónsono con lo anterior, la LPAU se inspiró en el propósito de brindar a la ciudadanía servicios públicos de alta calidad, eficiencia, esmero y prontitud; así que erigió que se aplicaría e interpretaría liberalmente para alcanzar dichos propósitos con el resguardo de las garantías básicas del debido proceso de ley.[64] No debe frustrarse esta intención legislativa y obtener un desenlace que resulte absurdo ante los ojos de cualquier persona. La conclusión a la que lleguemos debe responder a los más altos principios de administración de la justicia.

---

[63] Exposición de Motivos de la Ley de la Judicatura de 2003, *supra*. (2003 (Parte 1) Leyes de Puerto Rico 971); Íd., Art. 4.002. (4 LPRA sec. 24u).

[64] Exposición de Motivos de la LPAU, *supra*. (1988 Leyes de Puerto Rico 825-826). Véase, además, <u>Hernández v. Golden Tower Dev. Corp.</u>, 125 DPR 744, 748 (1990).

La Sec. 2.7 de la LPAU no limita la competencia del Tribunal de Apelaciones para revisar una regla o reglamento que se aplicó por una agencia en un proceso adjudicativo. Tampoco excluye la revisión de una regla o reglamento al amparo de otras disposiciones. Su letra se ciñe a crear la acción de nulidad de un reglamento por el incumplimiento con la LPAU, sin que se tenga que probar que la reglamentación haya sido aplicada a quien la impugne. De igual manera, la Sec. 4.2 no limita la competencia del tribunal apelativo intermedio sobre ese asunto. En ese sentido, si bien la Sec. 2.7 de la LPAU establece un término de treinta días para impugnar una regla o reglamento de su faz, por incumplir con las disposiciones de la propia ley, esto no impide que posteriormente el foro apelativo revise la legalidad de un reglamento cuando se recurre en revisión de la determinación de una agencia bajo la Sec. 4.2 de la LPAU. En este último caso el escrutinio se realiza, incidentalmente, como parte de la revisión de la decisión final de la agencia.

Con ello en mente, cuando hemos tenido que revisar si determinado reglamento es válido —y éste sirvió de fundamento para la resolución final de la agencia—, así lo hemos hecho. Después de todo, una de las vertientes sustantivas de la revisión judicial impone el deber a los tribunales de pasar juicio en cuanto a si la actuación administrativa es conforme a derecho y se ajusta al poder

delegado.[65] Es decir, la revisión que hace el tribunal de las decisiones administrativas tiene como fin primordial asegurarse de que éstas desempeñen sus funciones conforme a la ley.[66] Así, hemos precisado ciertos criterios que, como cuestión de umbral, ayudan a determinar la legalidad de la reglamentación para, entonces, considerar si la decisión final agencial amparada en dicha regla o reglamento debe sostenerse, a saber:

> (1) si se delegó el poder de reglamentación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la L.P.A.U., y (5) si la reglamentación es arbitraria y caprichosa.[67]

En virtud de esta evaluación, con el fin de otorgar un remedio apropiado y cerciorarnos de que las conclusiones y fundamentos en derecho son correctos, no hay inconvenientes en que si el Tribunal de Apelaciones concluye que se incumplió con éstos, se declare *ultra vires* la actuación administrativa.[68] Resolver lo contrario conllevaría restringir la facultad del foro apelativo para revisar la

---

[65] La Sec. 4.5 de la LPAU, *supra*, establece lo siguiente: "[e]l Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hecho de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal". 3 LPRA sec. 2175.

[66] Torres v. Junta de Ingenieros, 161 DPR 696, 707 (2004).

[67] OEG v. Santiago Guzmán, *supra*, pág. 226, al citar a Perfect Cleaning v. Cardiovascular, *supra*, pág. 759.

[68] OEG v. Santiago Guzmán, *supra*, pág. 226. Véanse además: Ayala Hernández v. Consejo de Titulares, *supra*, pág. 569 esc. 17; Perfect Cleaning v. Cardiovascular, *supra*; Pérez v. Com. Rel. Trab. Pub., *supra*, pág. 187; Caribe Comms., Inc. v. PRTCo, *supra*, págs. 211-212. Véase además la Sec. 4.5 de la LPAU, *supra,* 3 LPRA sec. 2175.

corrección del dictamen adjudicativo del órgano administrativo y, como resultado, privarlo de la competencia concedida en la Sec. 4.2 de la ley. Además, tendría el efecto de bifurcar procesos entre el Tribunal de Apelaciones y el Tribunal de Primera Instancia, ya que la misma parte tendría que presentar un caso en ambos foros para cuestionar el dictamen de la agencia. Este proceder resultaría contrario a la jurisdicción unificada que impera en nuestro sistema judicial y constituiría un retroceso a la economía procesal que persigue la LPAU y la Ley de la Judicatura de 2003.

## VI

En este caso la peticionaria acudió al Tribunal de Apelaciones y solicitó la revisión de la resolución final emitida por la Junta dentro del término jurisdiccional de treinta días dispuesto en la Sec. 4.2 de la LPAU. Esto, ante la denegatoria de la agencia de concederle la licencia de corredora de bienes raíces. La decisión de la Junta se produjo por haberse presentado los documentos a esos efectos fuera del plazo de noventa días establecido en el Reglamento Núm. 5567 de la Junta. Sin duda, el Tribunal de Apelaciones estaba obligado ——como cuestión de derecho y recurso exclusivo que es—— a resolver si se había infringido el debido proceso de ley de la peticionaria y si era necesaria la notificación del término de noventa días que establece el reglamento. De no haber tenido razón la peticionaria en este asunto, el Tribunal de Apelaciones no tenía más remedio que pasar juicio sobre la legalidad de la disposición

reglamentaria aplicada como parte de la revisión de la resolución final de la agencia. Esta sería la única forma en que el foro apelativo intermedio hubiera podido determinar que la actuación de la Junta, consignada en la resolución administrativa, era correcta y conforme a derecho. El alcance de la revisión que está llamado a hacer el Tribunal de Apelaciones, permitía esta evaluación. Es decir, el foro apelativo intermedio tenía facultad para revisar la validez del Art. 17 del Reglamento Núm. 5567, *supra*. Consiguientemente, erró al declararse sin jurisdicción y desestimar el recurso.

## VII

Con el fin de salvaguardar la economía procesal que debe imperar en todo procedimiento, y en vista de que el Tribunal de Apelaciones había adjudicado inicialmente las controversias que tenía ante su consideración, al declarar arbitrario y caprichoso el término de noventa días dispuesto por el Reglamento Núm. 5567, *supra*, es preciso que dilucidemos las controversias en sus méritos. En primer lugar, a la luz de las normas de autolimitación judicial que exigen no pasar juicio sobre la validez de una ley o un reglamento a menos de que sea necesario, determinaremos si debía notificarse a la peticionaria el término de noventa días para presentar la solicitud de la licencia. En ese sentido, solo examinaremos si la Junta tenía la facultad

delegada de establecer un término de noventa días, como lo hizo, si decretamos que su notificación no era requerida.[69]

### A. *La notificación del término de noventa días*

El Art. II, Sec. 7 de la Constitución de Puerto Rico establece el derecho de toda persona a que se le garantice el debido proceso de ley como condición para ser privado de su propiedad o libertad.[70] Esta garantía también se reconoce en la Enmienda V y XIV de la Constitución de Estados Unidos.[71]

Al interpretar esta disposición de nuestra Carta Magna, hemos aclarado que el debido proceso de ley se manifiesta en dos dimensiones distintas: la sustantiva y la procesal. La vertiente sustantiva requiere que "los tribunales examin[e]n la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas".[72] Por su parte, la vertiente procesal exige que la privación de los derechos propietarios y libertarios se realice mediante un proceso justo y equitativo.[73] Esta última es la que está en disputa en el caso ante nos.

Como es de esperarse, para que entre en vigor la modalidad procesal del debido proceso de ley, tiene que estar

---

[69] *ELA v. Aguayo*, 80 DPR 552, 596 (1958); *Brau, Linares v. ELA et als.*, 190 DPR 315, 337-338 (2014).

[70] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 301 ("Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley […]").

[71] Enm. V y XIV, Const. EU, USCA. Tomo 1.

[72] *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 887 (1993).

[73] *Mun. de San Juan v. Jta. Planificación*, 189 DPR 895, 907 (2013); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 735-736 (2010); *Rivera Rodríguez & Co. v. Stowell Taylor*, *supra,* págs. 887-888.

en juego un interés individual de libertad o propiedad.[74] Una vez se determina que se cumplió esta exigencia, procede que definamos cuál es el proceso exigido (*what process is due*).[75] Por su naturaleza circunstancial, "[d]ependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, *pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial*".[76]

La Oficina del Procurador General arguyó que la peticionaria no tenía derecho a que se le notificara sobre la necesidad de someter los documentos para obtener la licencia de corredora de bienes raíces porque, ante la ausencia de algún interés propietario que se viera afectado, no se activaba la cláusula constitucional de debido proceso de ley en su vertiente procesal.[77] Sostuvo que la aprobación del examen de reválida no le confería un derecho de propiedad a ésta sobre la profesión, por lo que no era necesario notificar el término aludido. Es decir, el Procurador General

---

[74] Rivera Rodríguez & Co. v. Stowell Taylor, *supra,* pág. 888; Board of Regent v. Roth, 408 US 564 (1972).

[75] Rivera Rodríguez & Co. v. Stowell Taylor, *supra,* pág. 888; Morrisey v. Brewer, 408 US 471, 481 (1972). En el contexto de procesos adjudicativos, en el pasado hemos reconocido que el debido proceso de ley procesal exige, como mínimo, lo siguiente: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el récord.

[76] Rivera Rodríguez & Co. v. Stowell Taylor, *supra,* pág. 888; Marcano v. Departamento de Estado, 163 DPR 778, 792 (2005). En ese análisis, debemos evaluar: (1) cuáles son los intereses individuales afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Rivera Rodríguez & Co. v. Stowell Taylor, *supra,* pág. 888; Mathews v. Eldridge, 424 US 319 (1976).

[77] *Alegato del Estado*, págs. 14 y 17.

adujo que como la señora Fuentes Bonilla no tenía un derecho adquirido a ejercer la profesión de corredora de bienes raíces, únicamente estaba obligada a notificarle la aprobación del examen y no a advertirle sobre el plazo de noventa días. Expuso que la notificación de los resultados de la reválida no era una decisión final, sino que se trataba de una notificación que daba comienzo al proceso de obtención de una licencia y que no incidía sobre las garantías del debido proceso de ley. Además, alegó que el Reglamento Núm. 5567, *supra*, era parte de las materias examinadas en la reválida, por lo cual ésta debía conocer ese requisito. No tiene razón.

Si bien hemos reconocido que la aprobación de un examen de reválida no confiere un derecho adquirido para ejercer la profesión hasta tanto se otorgue la licencia correspondiente, ello no significa que la señora Fuentes Bonilla no tuviera derecho a ser notificada sobre la necesidad de presentar la totalidad de los documentos dentro de un periodo de noventa días. En primer lugar, debemos tener presente que el incumplimiento con el plazo de noventa días tenía el efecto de invalidar la aprobación del examen y la obligaba a tomarlo nuevamente.[78] Sin embargo, desde <u>Marcano Rivera v.</u>

---

[78] El Art. 17 del Reglamento Núm. 5567, *supra*, al erigir el trámite una vez aprobado el examen expresa lo siguiente:

> **"Sección 1.** A partir de la fecha en que el examinado es notificado de que aprobó el examen, tendrá un término de noventa (90) días para radicar y someter a la Junta todos los documentos requeridos por la Ley o por este Reglamento y cumplir con todos los requisitos posteriores al examen que sean necesarios para completar el proceso de otorgamiento de la licencia
>
> **Sección 2.** Transcurrido el término de noventa (90) días sin que el examinado cumpla con lo establecido en la sección anterior, se archivará su solicitud por entender que el

<u>Departamento de Estado</u>, 163 DPR 778, 793-794 (2005), reconocimos que la aprobación de un examen de reválida, como requisito previo para obtener una licencia, constituía un interés valioso que solo procedía descartarlo de esa forma en situaciones excepcionales como las que presentaba aquel caso.[79]

En segundo lugar, hay instancias en las que la Asamblea Legislativa o el propio órgano administrativo han reconocido cuáles garantías procesales deben observarse. En esas ocasiones, el cumplimiento cabal con las normas procesales no se limita al momento en que la persona haya adquirido un derecho propietario para ejercer alguna profesión, sino que queda definido en las normas y estatutos correspondientes. Una agencia no puede apartarse del proceso establecido mediante ley o reglamento.[80]

La Junta promulgó el Reglamento Núm. 5567, *supra*, para instrumentar su ley orgánica "y proveer para la autorización de la práctica de la profesión de corredores y vendedores de bienes raíces […] mediante la concesión de las correspondientes licencias a aquellas personas y empresas que

---

examinado no tiene interés en obtener su licencia y **perderá su derecho a obtenerla por haber aprobado ese examen**". (Énfasis y subrayado suplido).

[79] E.g., por acciones fraudulentas al suministrarse el examen. Particularmente, en <u>Marcano Rivera v. Departamento de Estado</u>, *supra*, págs. 790-791, no se exigió trámite específico con cada persona que había aprobado el examen porque "[l]as graves irregularidades en la administración del examen de reválida en cuestión imposibilitaban determinar cuáles aspirantes tenían los conocimientos mínimos requeridos para ejercer la profesión de perito electricista en forma responsable. Ante esta conclusión, la única alternativa plausible era anular el examen teórico y permitir a todos los aspirantes afectados tomarlo de nuevo, libre de costo".

[80] <u>Ayala Hernández v. Consejo de Titulares</u>, *supra*.

re[ú]nan los requisitos y condiciones prescritas por dicha ley".[81] El Reglamento Núm. 5567 demuestra que la Junta estaba obligada a proveer a la peticionaria las instrucciones sobre los requisitos que debía cumplir para obtener, finalmente, la licencia de corredora de bienes raíces.

La Sec. 4 del Art. 16 del Reglamento Núm. 5567 dispone que "[e]n los casos en que el examinado apruebe el examen, se le enviará junto con la notificación el formulario con instrucciones para que proceda a radicar el pago de la fianza y a cumplir con los demás requisitos que se disponen por la ley o este reglamento".[82] Es decir, se erigió que en los casos en que una persona apruebe el examen de reválida de corredores de bienes raíces, la Junta viene obligada a remitir la notificación de haberlo aprobado junto a las instrucciones para que el aspirante proceda: (1) a radicar el pago de la fianza requerida y (2) a cumplir con los demás requisitos que se disponen en la ley o en ese reglamento.

Conforme se infiere, el término de noventa días dispuesto en el Art. 17 del Reglamento Núm. 5567 constituye un requisito adicional que debe cumplir la peticionaria para que se le conceda la licencia luego de aprobar la reválida. Ello hacía necesario que el referido plazo se incluyera expresamente en las instrucciones de los requisitos que dispone la ley y el reglamento.

---

[81] Art. 3 del Reglamento de la Ley para Reglamentar el Negocio de Bienes Raíces en Puerto Rico (Reglamento Núm. 5567), Reglamento Núm. 5567 de 3 de abril de 1997.

[82] Art. 16, Sec. 4, del Reglamento Núm. 5567, *supra*.

Como consecuencia, resolvemos que la Junta estaba obligada a informarle a la peticionaria, junto a la notificación de que había aprobado el examen, que tenía noventa días para someter todos los documentos y cumplir con los demás requisitos para que se le pudiera otorgar su licencia. Como no lo hizo, corresponde que la Junta notifique nuevamente a la señora Fuentes Bonilla la aprobación del examen y cumpla las demás formalidades que erige el Reglamento Núm. 5567.

## VIII

Por los fundamentos antes expuestos, *revocamos la Sentencia recurrida emitida por el Tribunal de Apelaciones y devolvemos el caso a la Junta para ulteriores procedimientos consistentes con esta opinión.*

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María Mercedes Fuentes Bonilla<br><br>Apelante<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Apelados | AC-2016-0116 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2018.

Por los fundamentos antes expuestos, los cuales se hacen formar parte de la presente Sentencia, revocamos la Sentencia recurrida emitida por el Tribunal de Apelaciones y devolvemos el caso a la Junta de Corredores, Vendedores y Empresas de Bienes Raíces para ulteriores procedimientos consistentes con la Opinión.

La Juez Asociada señora Rodríguez Rodríguez disintió sin opinión escrita. El Juez Asociado señor Colón Pérez concurrió sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez no intervino.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.

Sonnya Isabel Ramos Zeno
Secretaria del Tribunal Supremo Interina